A97A0971. HUNTER v. CARTER et al.
(485 SE2d 827)

ELDRIDGE, Judge.

Appellant Kendall Hunter challenges the trial court's order granting visitation rights with her daughter, D. H., to the appellees, the child's paternal grandparents. The appellees are the parents of appellant's former husband and the child's biological father. The biological father's parental rights to the child had been surrendered previously. Appellant remarried and her new husband sought to adopt the child, D. H.; it was during those proceedings that appellees intervened to seek visitation rights with the child. After conducting a hearing on the visitation petition on September 3, 1996, the trial court awarded twice-monthly visitation privileges to the grandparents. Because we find that the evidence does not support the trial court's conclusions of fact, we reverse.

1. In the first enumeration of error, appellant asserts that the trial court erred in finding that the child would be harmed if the court denied visitation rights to the appellees/grandparents. The

standard for mandating visitation with grandparents in the absence of the parent's consent is clearly outlined in OCGA § 19-7-3 (b); the court must find: (1) that the health or welfare of the child would be harmed unless such visitation is granted and (2) that such visitation is in the best interests of the child. See also *Brooks v. Parkerson*, 265 Ga. 189 (454 SE2d 769) (1995) (declaring a previous version of OCGA § 19-7-3 unconstitutional because it failed to require a showing of harm before authorizing state interference with parental control). Further, due process requires that evidence supporting mandated visitation rights must meet the clear and convincing standard of proof. *Santosky v. Kramer*, 455 U. S. 745, 769 (102 SC 1388, 71 LE2d 599) (1982).

There is extensive, compelling justification for requiring a judge to look so closely at the impact of forced visitation on a child and his immediate family. In *Meyer v. Nebraska*, 262 U. S. 390, 399 (43 SC 625, 67 LE 1042) (1923), the United States Supreme Court recognized that parents have a constitutionally protected right to raise their children without undue state interference. According to the Court, this "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Santosky v. Kramer*, supra at 753; see also *Brooks v. Parkerson*, supra at 192 (parental rights are also derived from privacy rights inherent in the United States and Georgia Constitutions).

"The right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances. . . . [S]tate interference with a parent's right to raise children is justifiable *only* where the state acts in its police power to protect the child's health or welfare, *and* where parental decisions in the area would result in harm to the child." (Citation and punctuation omitted; emphasis supplied.) *Brooks v. Parkerson*, supra at 192-193 (2) (a) and (b), and cases cited therein. "Allowing the government to force upon an unwilling family a third party, even when the third party happens to be a grandparent, is a significant intrusion into the integral family unit." (Punctuation omitted.) Id. at 194, n. 6, quoting *Herndon v. Tuhey*, 857 SW2d 203 (Mo. 1993).

In the case sub judice, no evidence was presented to support the trial court's finding that appellant's child would be harmed if the grandparents were denied visitation rights. In fact, upon review of the record, the evidence clearly indicates that forcing the child to spend significant portions of every other weekend with her grandparents, over the objections of the child's parents, would be detrimental and disruptive to the child and her parents.

The evidence establishes that no bond currently exists between appellees and D. H.; the grandparents have not seen the child since

she was four years old, have not sent a birthday card or Christmas present in over two years, and have not provided any financial support since the child was an infant. As a result, the child, now six years old, knows the appellees only through photographs.

There is also extensive evidence in the record that the child's mother, appellant, and the appellees have been estranged for at least two years and that their previous relationship was poor, at best. Appellant's husband, the child's prospective adoptive father, testified that the appellees had instructed the child not to call him "daddy," but to call him by his first name. He also testified that the appellees had pressured him to keep the child's surname as "Carter," as opposed to changing it to "Hunter" following the upcoming adoption.

Further, both appellees admitted that they had called the sheriff's department to report alleged misconduct by appellant, and admitted that they did not attempt to discuss their concerns regarding D. H. with appellant because "we didn't have that kind of relationship." Appellant also testified that appellee contacted the Georgia Department of Family & Children Services ("DFCS") and requested that they investigate appellant; DFCS closed the case after finding no evidence of abuse or abandonment. Although reporting child abuse or neglect could be viewed as a natural, even admirable, response by concerned grandparents to legitimate concerns, there is no question that such allegations severely, perhaps irrevocably, damaged the relationship between the parties in the case sub judice. Under the circumstances, "the impact of a lawsuit to enforce [visitation] over the parents' objection can only have a deleterious effect on the child," thereby negating any potential positive impact resulting from visitation. *Brooks v. Parkerson*, supra at 194.

"It is irrelevant . . . that it might, in many instances[,] be 'better' or 'desirable' for a child to maintain contact with a grandparent." Id. at 194. The trial court's insistence that the "child is lucky to have them as grandparents" and that visitation would be "additive," i.e., an additional benefit for the child, should not factor into the court's consideration. Further, any detrimental impact to the grandparents through the loss of visitation opportunities with a grandchild, whether due to the death or divorce of a child's parents, relocation of the family, or other unfortunate circumstances, is irrelevant to the court's determination of whether or not to grant visitation rights to the grandparents. This Court recognizes that grandparents who are denied access to grandchildren sometimes suffer greatly from the loss. However, the trial court is strictly limited to considering *only* the child's well-being, i.e., whether the child would be harmed if visitation is denied and whether visitation serves the child's best interests. Absent clear and convincing evidence that the child would experience actual physical, mental, or emotional harm if

visitation was denied, the trial court cannot justify mandating grand-parent visitation over the objections of the parents. Since no evidence was presented showing potential harm to the child at issue in the case sub judice, the trial court's order granting visitation rights must be reversed.

2. Accordingly, appellant's second enumeration of error is moot.
*Judgment reversed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED APRIL 23, 1997.

Before Judge Brown.
*Rodney E. Davis, Gregory W. Holt*, for appellant.
*Anita M. Denley*, for appellees.