## A00A0736. PERRIN v. STANSELL et al.
### (533 SE2d 458)

ELDRIDGE, Judge.

Appellant Nita Perrin filed an application for discretionary review of an order by the Hart County Superior Court denying her petition for unsupervised visitation with her grandchild when temporary custody was in the paternal grandmother. This Court agreed to consider the appeal and, after reviewing the record, finds that the trial court erred as a matter of law in denying the appellant's petition based upon the grandparent visitation standard in OCGA § 19-7-3. Therefore, we reverse the trial court's order and remand with directions for a new hearing.

The appellant is the maternal grandmother of the child at issue, B. S., born May 20, 1996. The appellant was present when B. S. was born and babysat B. S. on numerous occasions throughout the next several months. However, in December 1996, when B. S. was six months old, her father, Scottie Stansell, murdered her mother, the appellant's daughter. Immediately after the murder, Stansell went to the home of his mother, Shirley Ankerich — the appellee (hereinafter "appellee"), where he stayed with B. S. until he was arrested. Stansell was convicted of murder and is currently incarcerated in Elbert County.

On January 27, 1997, the appellant filed a petition against Stansell in Elbert County; the appellant sought permanent custody of B. S. on the basis that Stansell was unfit. Coincidentally, earlier the same day, the Hart County Juvenile Court had granted a petition by the appellee, giving her "shelter care" temporary custody of B. S., pursuant to OCGA § 15-11-18.

For the next several months, the child lived with appellee, who allowed the appellant only supervised visits with B. S. in the appellee's home. In April 1997, the appellee was allowed to intervene in

the appellant's custody petition against Stansell. The parties then agreed to move the case to Hart County, where the appellee resided.

Eventually, the relationship between the parties soured, and the appellee refused to allow the appellant any further visitation with B. S. The appellant amended her petition to request court-ordered, unsupervised visitation with B. S. as an alternative to custody.

A hearing was conducted on the appellant's petition on June 10, 1999. At the hearing, however, the appellant informed the trial court that she was abandoning her custody request and intended to seek only visitation rights at that time. Following the presentation of the appellant's case, the trial court granted appellee's motion for a directed verdict against the appellant, thereby denying the appellant's petition. In ruling upon the petition, the trial court applied the following provision to the appellant's visitation petition:

> the court may grant any grandparent of the child reasonable visitation rights if the court finds the health or welfare of the child would be harmed unless such visitation is granted, and if the best interests of the child would be served by such visitation.

OCGA § 19-7-3 (c). See also *Hunter v. Carter*, 226 Ga. App. 251 (485 SE2d 827) (1997). In its order, the trial court concluded that the appellant presented no evidence to demonstrate that B. S. would be harmed if the appellant's visitation request was denied. The appellant appeals from the trial court's order. *Held*:

1. The appellant contends that the trial court erred as a matter of law in applying the evidentiary standard enunciated in OCGA § 19-7-3 (c), i.e., the grandparent visitation statute, and *Hunter v. Carter*, supra,[1] to the facts of this case. We agree and reverse the trial court's order.

(a) OCGA § 19-7-3 was adopted by the Georgia Legislature to provide a mechanism for courts to grant a grandparent visitation rights with his or her minor grandchild over the objections of the child's *parent(s)*.[2] The statute codified a standard for the trial courts

---

[1] *Hunter v. Carter*, supra, involved a mother's appeal of a trial court's order granting the paternal grandparents visitation rights with her daughter over her objection. This Court reversed the order, holding that the grandparents had failed to present any evidence that the child would be harmed absent visitation. Id. at 254.

[2] Prior to 1996, the statute allowed grandparents to gain visitation if they established that it was in the child's best interest. See Ga. L. 1993, p. 456, § 1; *Brooks v. Parkerson*, 265 Ga. 189, 190 (1) (454 SE2d 769) (1995). However, the Supreme Court of Georgia struck down the statute as unconstitutional in 1995, finding that such statute infringed upon the "constitutionally protected interest of *parents* to raise their children without undue state interference. [Cit.]" (Emphasis supplied.) Id. at 191 (2) (a). The Supreme Court of Georgia noted that, under both the state and federal constitutions, "state interference with *parental rights*

to utilize in balancing the wishes of an alienated grandparent, the rights of the parents, and the interests of the child. See footnote 2, supra. Such standard requires the petitioning grandparent to meet an extremely high evidentiary burden, i.e., to demonstrate by clear and convincing evidence that the potential for harm to the child absent visitation is so great that it *outweighs the parents' constitutionally protected interests in raising that child*.

However, no such constitutionally protected parental interests are involved in this appeal, because the custodial grandparent does not stand in the shoes of the parent.[3] The record clearly shows that, although the appellee's temporary custody of B. S. apparently was extended at least once since the original January 1997 "shelter care" order, the appellee has never acquired permanent custody or legal guardianship.[4] See *Edgar v. Shave*, 205 Ga. App. 337, 338-339 (2) (422 SE2d 234) (1992). To recognize such relationship as sufficient to apply the provisions of OCGA § 19-7-3 would essentially encourage a "race to the courthouse," whereby one grandparent can preclude a child's visitation with another grandparent simply by being the first to file a petition for temporary custody. Further, absent adoption, a third party never acquires the constitutional status of a parent, even if they have legal custody and are a grandparent.

Accordingly, the trial court erred by applying the provisions of OCGA § 19-7-3 to this case.

(b) Further, OCGA § 19-7-3 (b) provides that a grandparent has the right to seek court-ordered visitation of a minor child in the following situations: when the child is the subject of a custody action; if the child's parents are separated or divorced and the child is living with one parent; if the child's parents are involved in a divorce action; if the child's parents are involved in an action to terminate their parental rights; or if the child is being adopted by a blood relative or stepparent. OCGA § 19-7-3 (b); *Brooks v. Parkerson*, 265 Ga. 189, 190 (1) (454 SE2d 769) (1995). None of these situations are present in this case. The appellant herein has abandoned her custody action against Stansell, the child's father; custody of B. S. has not

to custody and control of children is permissible only where the health or welfare of a child is threatened. [Cits.]" (Emphasis supplied). Id. at 193. See also *Hunter v. Carter*, supra at 252. In 1996, the Georgia Legislature amended OCGA § 19-7-3 (b) to require that the petitioning grandparent prove by clear and convincing evidence that: (1) the child would be harmed unless visitation is granted, and (2) visitation would be in the child's best interest. Ga. L. 1996, p. 1089, § 1; *Hunter v. Carter*, supra. For additional history of Georgia's grandparents' visitation statute, see *Brooks v. Parkerson*, supra at 190, n. 2, and citations therein.

[3] Stansell, the child's father and the appellee's co-defendant, did not respond to the appellant's amended complaint requesting visitation, did not participate in the trial court's hearing, and failed to file a responsive brief in this appeal.

[4] Contrary to appellee's repeated assertions, a permanent custody order has never been entered in this case.

been permanently transferred to another; and Stansell's parental rights have not been terminated or surrendered. See OCGA § 15-11-81.

(c) Finally, although OCGA § 19-7-3 (c) grants a legal custodian the right to challenge the grant of visitation rights to a grandparent, such challenge may not take place until *after* visitation rights have been granted. Without deciding whether appellee's status as a temporary "shelter care" custodian qualifies her as the "legal custodian"[5] for the purposes of this statute, it is clear that, under the plain language of OCGA § 19-7-3, the appellee had standing to oppose the appellant's petition for visitation rights, although not in the status of a parent. The trial court's finding that the appellee had a "superior legal right to the child under OCGA § 9-7-3 [sic]" was error as a matter of law, because both grandparents are third parties of equal status to the grandchild.

(d) Based upon our finding that OCGA § 19-7-3 does not apply to this case, we reverse the trial court's order directing a verdict in favor of the appellee and remand this case for a new hearing that is consistent with Division 2, infra.

2. Upon rehearing, the trial court will again be confronted with the determination of the proper standard to apply to the facts of this case, as follows: what does a grandparent have to demonstrate in order to gain visitation rights with a grandchild who is in the temporary custody of a third party, i.e., another grandparent or a stranger? This Court finds that, in grandparent visitation cases such as this where parental rights and control are not an issue, it is not necessary for the petitioning grandparent to prove that the child would be harmed without visitation. Compare *Brooks v. Parkerson*, supra; *Hunter v. Carter*, supra.

Instead, the petitioning grandparent must demonstrate by a simple preponderance of evidence that visitation is in the best interest of the child. This standard is consistently applied when issues of child custody arise. See OCGA §§ 19-7-1 (b.1); 19-9-3 (a) (2); see also, e.g., *Mabry v. Tadlock*, 157 Ga. App. 257, 259 (277 SE2d 688) (1981). It also reflects "the express policy of this state to encourage that a minor child has continuing contact with parents and grandparents who have shown the ability to act in the best interest of the child." OCGA § 19-9-3 (d).

A petitioning grandparent may make such showing by demon-

---

[5] See OCGA § 15-11-43. Further, appellee cited *In the Interest of K. B.*, 188 Ga. App. 199 (372 SE2d 476) (1988), during oral arguments to this Court on the issue of appellee's custodial status. *K. B.*, supra, is distinguishable on its facts, however, in that it deals with *parents*' visitation rights to a deprived child placed in the temporary custody of the Department of Family & Children Services.

strating the benefits of establishing or continuing an ongoing relationship with the child. As an alternative, the petitioning grandparent can create the rebuttable presumption that visitation is in the child's best interest by presenting evidence that the petitioning grandparent had a positive, ongoing, previous relationship with the child. If such presumption is established, however, it may be rebutted by demonstrating that future visitation with the petitioning grandparent would be harmful to the child and, therefore, would not be in the child's best interest. Such evidence does not include personal problems with the legal custodian that do not affect the child.[6]

Such standard is particularly appropriate in this case, wherein the appellant had provided regular, ongoing care for the child until she was six months old, when her mother was killed by her father; the child's age precluded her from fully bonding to the appellant; the appellant's ongoing contact with the child was abruptly ended by the appellee, the child's temporary custodian, at a time when the child was so young that she may not have been able to fully appreciate or verbalize the effect of the appellant's absence in her life; and the child's visitation with the appellant was her only opportunity for contact with her maternal relatives. In such case, appellant's burden would be too high if she was required to present clear and convincing evidence that the child would be harmed without visitation. Such evidentiary standard applies only when a parent or parents are involved.

We find, therefore, that the trial court erred as a matter of law and fact when it concluded that the appellant failed to present evidence that the child would be harmed unless visitation was granted. If the trial court had not utilized the standard under OCGA § 19-7-3, it would have recognized that the appellant fulfilled her burden to present evidence that would support a finding by a preponderance of evidence that visitation was in the child's best interest, thereby precluding a directed verdict. Accordingly, we remand this case for a new hearing which is consistent with this opinion.

3. The appellant also contends that the trial court's order failed to provide any specific written findings of fact, as required by OCGA § 19-7-3 (c). While we agree that the trial court's order contained only conclusions of law and its ruling based thereon, this Court has already determined that OCGA § 19-7-3 does not apply to this case. As such, the trial court is not required to provide written findings of fact absent a motion pursuant to OCGA § 9-11-52. However, as this case has been remanded for rehearing and because of the strong pos-

---

[6] Thus, in this case, evidence of the appellant's ex-husband's criminal history is irrelevant and inadmissible on the issue of whether visitation with the appellant would be in the child's best interest, since he is not present in appellant's household.

sibility of future requests for appellate review of the outcome of such hearings, this Court strongly recommends that the trial court make specific written findings of fact and conclusions of law to enable this Court to conduct an intelligent review of the merits of such potential appeal. See *Grantham v. Grantham*, 269 Ga. 413, 414 (1) (499 SE2d 67) (1998); see also *In the Interest of S. P.*, 240 Ga. App. 827, 829 (525 SE2d 403) (1999); *In the Interest of C. T.*, 197 Ga. App. 300, 303-304 (398 SE2d 286) (1990).

4. The appellant's remaining enumerations are moot.

*Judgment reversed and remanded. Blackburn, P. J., and Barnes, J., concur.*

DECIDED APRIL 12, 2000.

*Daniels & Rothman, Jeffery A. Rothman,* for appellant.
*Timmons, Haggard & Carney, Brian S. Carney,* for appellees.