### A06A0216. LUKE v. LUKE.
#### (634 SE2d 439)

PHIPPS, Judge.

Mia Luke contests an order awarding Carlton "Pete" Luke visitation with her children under the Grandparent Visitation Statute.[1] Because she has shown no error, we affirm.

Mia Luke and Pete Luke's son divorced in 2002. Mia Luke received sole legal custody of their three children, born in 1998, 1999, and 2001. The children's father received visitation that included every other entire weekend. In 2004, the children's father enlisted in the United States Army for a term of three years and twenty-three weeks, was relocated to Washington state at the time of the hearing in March 2005, and was scheduled for a Summer 2005 deployment to Iraq.

Pete Luke petitioned for court-ordered visitation with his grandchildren. Among other things, he claimed that the children's health or welfare would be harmed without visitation; that the visitation would serve the children's best interests; that the children had developed a strong familial bond with him and his family; and that "with the children's father now serving with the U. S. Army, the children's ties with their paternal family would be virtually destroyed without such visitation."

At the hearing, Pete Luke testified that, both before and after his son joined the Army, he had maintained a relationship with his three grandchildren. In July 2004, Mia Luke informally agreed to allow him visitation with them every first, third, and fifth weekend of the month. The two older children would stay the entire weekend, and

---

used to enhance defendant's sentence was one for burglary, trial court erred in utilizing general recidivist statute).

[1] OCGA § 19-7-3; see *Brooks v. Parkerson*, 265 Ga. 189 (454 SE2d 769) (1995).

the youngest child would visit on Sunday afternoons. During their time together they enjoyed visiting playgrounds, bowling, skating, and other family entertainment. They had twice attended church. Pete Luke testified that he and his two older grandchildren had a close bond; and while he had shared less time with the youngest grandchild, their time together had been positive. During visitation weekends, the children had been with him most of the time, but also had spent "a good bit of time" with his mother and her husband and had bonded with them also. Usually, after picking up the children on Friday evening, he would take them to his mother's home, where they would spend the night. Sometimes, he would also spend Friday night there. He generally spent about four or five hours with the children on Saturday at his mother's home and all day with them on Sunday because his entire family spent that day at his mother's. And other weekends, Pete Luke recalled, he and his grandchildren had spent the whole weekend at his mother's home. He claimed that, because he was divorced, his mother's home was more suitable for the children. Pete Luke testified that his employment in the real estate business rendered his schedule unpredictable. And when work demanded his attention during the children's visits, he arranged either for his mother to come to his home to babysit or for his grandchildren to go to her home. He explained, "[W]e work as a family." Pete Luke testified, "I spend every possible moment I can with my grandchildren, and I make sure that my mother gets every possible moment she can with them, because we love them."

Mia Luke testified that she eventually had misgivings about allowing her children visitation with their paternal relatives based on several incidents. After one visit, her youngest daughter reported to her that "granny had popped her on the face when she tried to open a present." She testified further that Pete Luke's mother had filed a complaint against her with the Department of Family and Children Services (DFCS), reporting that she had refused to permit the children to go with her on a week-long Florida vacation. DFCS opened a case, questioned Mia Luke, conducted a home visit, and then dismissed the case. Mia Luke also stated that, although her children often enjoyed their visits, her older daughter sometimes returned very emotional and questioned why she and her father had divorced and whether her mother loved her. Mia Luke testified that it took time for her daughter to feel secure again. Mia Luke also believed that her children were being "shuffled around" during their visits with Pete Luke, including being left at the homes of the children's stepmother's family members. And Mia Luke was displeased that her children were seldom taken to church during those weekends. Mia Luke testified that she agreed that her children should spend some time with their father's family, but "maybe not overnight and not for

a set time, just times where it's convenient" for her children and her. She explained that she was in her last semester of college and working as a student teacher.

The trial court granted Pete Luke visitation with his grandchildren, scheduling visitation for the older two children for the entire second and fourth weekends and for the youngest child from 9:00 a.m. until 5:00 p.m. on the Saturdays of those weekends until she reaches the age of five. At that time, the youngest child would visit with Pete Luke on the same schedule as her siblings. The court ordered that this schedule would continue until the children's father is discharged from the Army, lives within 100 miles of Mia Luke, or resumes his visitation. At that time, Pete Luke's visitation would consist only of the second weekend, from 6:00 p.m. on Friday until 6:00 p.m. on Sunday.

1. Mia Luke contends that the trial court

> failed to exercise its discretion and arbitrarily substituted the visitation schedule of the father for that of the paternal grandfather based on evidence that the father was in the military and unable to exercise his visitation, a ground which is irrelevant to the standard required for determining whether grandparent visitation should be allowed.

Mia Luke points to the trial court's express finding that the children's father was unable to exercise his visitation rights because of his military service, and asserts that any detrimental impact upon Pete Luke and his family's visitation opportunities caused by the children's father's military service is irrelevant in determining whether to grant visitation to Pete Luke.

The Grandparent Visitation Statute provides that "the court may grant any grandparent of the child reasonable visitation rights if the court finds the health or welfare of the child would be harmed unless such visitation is granted, and if the best interests of the child would be served by such visitation."[2] "Further, due process requires that evidence supporting mandated visitation rights must meet the clear and convincing standard of proof."[3] On appeal from an order granting grandparent visitation, we view the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the mandated visitation was authorized.[4] We do not

---

[2] OCGA § 19-7-3 (c).

[3] *Ormond v. Ormond*, 274 Ga. App. 869, 870 (619 SE2d 370) (2005) (citation, punctuation and footnote omitted).

[4] See *In the Interest of T. L.*, 269 Ga. App. 842, 843 (2) (605 SE2d 432) (2004); *In the Interest of F. C.*, 248 Ga. App. 675 (549 SE2d 125) (2001) (applying standard of review where state

weigh the evidence or determine witness credibility, but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.[5]

We agree with Mia Luke that grandparent visitation would not be authorized on the ground that the children's father's military obligations had curtailed Pete Luke's visitation opportunities with his grandchildren. "[A]ny detrimental impact to the grandparents through the loss of visitation opportunities with a grandchild, whether due to the death or divorce of a child's parents, relocation of the family, or other unfortunate circumstances, is irrelevant to the court's determination of whether or not to grant visitation rights to the grandparents."[6] In this case, however, the visitation award contained several findings, pertinently including, "by clear and convincing evidence that the minor children would suffer actual emotional harm unless visitation is granted to [Pete Luke], and that it is in the best interests of the minor children that visitation be granted to the Plaintiff."

Accordingly, the record shows that visitation was granted on the grounds authorized by the Grandparent Visitation Statute.

2. Mia Luke claims the visitation order fails to show that the trial court employed a clear and convincing evidentiary standard and fails to set forth specific written findings as required by the Grandparent Visitation Statute, which mandates the trial court to "make specific written findings of fact in support of its rulings."[7] Mia Luke cites *Rainey v. Lange*,[8] where the visitation order stated only:

> Given the allegations the parents have raised against each other (but without making a finding as to the truth or falsity of any of the allegations), the Court finds that enough issues have been raised that visitation with the (maternal grandparents) is in the child's best interests and will promote the child's well-being and avoid harm to the child's welfare, by way of providing a system of checks and balances.[9]

*Rainey* concluded that this broad conclusory statement failed to set forth specific findings of fact supporting the trial court's grant of grandparent visitation that would facilitate an intelligent review of

---

interferes with constitutional rights protecting parenting); see also *Brooks*, supra at 190-193 (2) (a), (b) (recognizing that federal and state constitutions protect the right to the custody and control of one's child and that mandated grandparent visitation is a state intrusion upon that right).

[5] See *In the Interest of T. L.*; *In the Interest of F. C.*, supra.

[6] *Hunter v. Carter*, 226 Ga. App. 251, 253 (1) (485 SE2d 827) (1997).

[7] OCGA § 19-7-3 (c).

[8] 261 Ga. App. 491 (583 SE2d 163) (2003).

[9] Id. at 492.

the merits of this case.[10] The visitation order was vacated, and the case was remanded for the trial court to employ a clear and convincing evidence standard and enter such written findings if supported by the evidence.[11]

The visitation award in this case, however, was based on the trial court's finding that "the strong, emotional bond between [Pete Luke] and the said minor children is so well established that the emotional welfare and well being of the children would actually suffer unless visitation with [Pete Luke] is granted." And the order contains a statement showing that the trial court employed the clear and convincing evidentiary standard. Thus, Mia Luke has failed to show that the visitation order is deficient as claimed.[12]

3. Mia Luke argues that the trial court's ruling that it was in the children's best interest to grant Pete Luke visitation was not supported by the record. She cites evidence that Pete Luke had not regularly taken her children to church; that Pete Luke's mother had hit one of her daughters;[13] and that the visits had adversely affected her older daughter's emotional state. She claims that her children are "shuffled around" during the visitation and that her relationship with Pete Luke was damaged by his mother's baseless complaint against her to DFCS. In addition, Mia Luke asserts that the trial court failed to consider that forcing visitation over a parent's objection may result in deleterious effects upon the child.

The Grandparent Visitation Statute was enacted to provide a mechanism for courts to grant a grandparent visitation rights with his or her minor grandchild, where, as here, a child's parent objects.[14] The statute codifies a standard for the trial courts to utilize in balancing the interests of the child, the rights of the parents, and the wishes of an alienated grandparent.[15] Where a petitioning grandparent meets this standard, a trial court may grant visitation — notwithstanding evidence or circumstances that weigh against a grant of visitation.[16]

Here, viewed in the light most favorable to the judgment, Pete Luke's testimony authorized the court's express finding that the

---

[10] Id.

[11] Id.

[12] Compare *Rainey*, supra; *Weiss v. Varnadore*, 246 Ga. App. 654, 660 (541 SE2d 448) (2000) (vacating visitation order, where it was not possible from the state of the record and the order of the court to determine what standard the trial court applied in its order and what evidence or agreement it relied upon in doing so).

[13] The parties have not included in the record a showing of the degree of any injury.

[14] *Perrin v. Stansell*, 243 Ga. App. 475, 476 (1) (a) (533 SE2d 458) (2000).

[15] Id. at 476-477.

[16] See OCGA § 19-7-3 (c); *Perrin*, supra.

children would suffer emotional harm unless visitation was granted.[17] Contrary to Mia Luke's contention, clear and convincing evidence supported the trial court's ruling that visitation with Pete Luke would serve the children's best interests.

4. Mia Luke contends that the trial court erred in granting visitation, asserting that Pete Luke's parents are the real parties in interest and that great-grandparents do not fall within the purview of the Grandparent Visitation Statute.[18] While the evidence shows that Pete Luke has allowed his grandchildren to spend apparently significant time with his parents and has depended upon his mother for babysitting, such evidence does not render the trial court's award erroneous.

5. Mia Luke contests the visitation award because it allows for the children to be out of her home three weekends a month when the children's father resumes his visitation. The Grandparent Visitation Statute authorizes "reasonable" visitation.[19] We cannot conclude that, under the circumstances of this case, the trial court abused its discretion in allowing the grandfather to exercise visitation one weekend a month after the father resumes exercise of his visitation rights.

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED JULY 5, 2006 —
RECONSIDERATION DENIED JULY 25, 2006 — 

*Michael J. Moore*, for appellant.
*Gardner & Gardner, Milton F. Gardner, Jr., Alan W. Thrower*, for appellee.

---

[17] Compare *Hunter*, supra at 252-254 (reversing grant of grandparent visitation, where no evidence was presented to support the trial court's finding that the child would be harmed if the grandparents were denied visitation rights).

[18] See OCGA § 19-7-3 (a) (defining "grandparent" as "the parent of a parent of a minor child, the parent of a minor child's parent who has died, and the parent of a minor child's parent whose parental rights have been terminated").

[19] OCGA § 19-7-3 (c).