A10A1923. LIGHTFOOT v. HOLLINS et al.
(707 SE2d 491)

ADAMS, Judge.

Harry M. Lightfoot, Jr., M.D., the biological father of J. L., appeals the denial of his motion for summary judgment in this action brought by the child's maternal grandparents seeking visitation with the child. We affirm.

Construed in favor of the grandparents, the evidence of record shows that Lightfoot and Dawn Hollins were married in 2001 and J. L. was born on December 19, 2002 in Durham, North Carolina. The parents separated in January 2003 and were divorced in June 2004. Hollins had primary custody of the child following the divorce. But, tragically, Hollins died on October 5, 2004, following a long battle with cancer. Lightfoot obtained custody of the child at that time. In September 2006, Lightfoot married Tywanda Ellison. In April 2007, Ellison purported to adopt the child in court proceedings in Durham County, North Carolina. The couple and child now live in Cobb County. As of the date of this opinion, the child is almost eight years old.

Leon and Carol Hollins are the child's maternal grandparents, and they live in Maryland. On November 2, 2009, the grandparents petitioned the Superior Court of Cobb County for visitation privileges and later amended the petition. The grandparents averred that Carol Hollins lived with Dawn and the child on a daily basis in Durham for the first 22 months of the child's life during the time that Dawn was struggling with cancer, but that since Dawn's death, Lightfoot has only allowed the grandparents to visit the child twice,

---

[15] *Page*, supra.

both times in 2005, when the child was two years old.

Six weeks after the petition was filed, Lightfoot filed a motion for summary judgment. He argued that because his current wife had legally adopted the child, the grandparents' rights to the child had been extinguished by operation of law. Furthermore, he asserted that the grandparents had failed to satisfy the requirements of OCGA § 19-7-3 (c) by providing clear and convincing evidence that the health or welfare of the child would be harmed if visitation were denied and that they failed to show that it would be in the best interest of the child for visitation to be granted. Lightfoot argued that because the grandparents had not seen the child since August 2005 or had any other contact, "[t]here are no facts or circumstances which can be alleged, in the face of this admitted non-relationship, that would sufficiently satisfy the criteria necessary to be successful with the Petition." He added that he was unaware of any attempts by the grandparents during that time to have contact with the child. Yet he asserted that at one unspecified point in time, the grandparents did seek visitation, for a full week each month and every other weekend, and he admits that communication regarding visitation continued through June 2007. Lightfoot's current wife averred that "[the child] does not have any memories of Leon and Carol Hollins and does not know who they are." Both Lightfoot and his wife stated that they did not want the court to order visitation to the grandparents.

In response to the motion, the grandparents averred that Lightfoot thwarted their attempts to have contact with the child, even though, in September 2004, he indicated he would make a good faith effort to arrange grandparent visitation. The grandparents also took steps from January 2005 through June 24, 2007 to attempt to establish visitation. They submitted several affidavits from witnesses who testified to the nature of the relationship between the child and her grandparents during the time that her mother was receiving cancer treatment, and testified that, based on that relationship, it would be in the child's best interest to know her maternal grandparents.

In January 2010, the grandparents moved for appointment of a guardian ad litem as authorized by OCGA § 19-7-3 (d) (1). At the hearing on the motion for summary judgment, the grandparents also invoked OCGA § 9-11-56 (f), which authorizes a court to refuse to grant summary judgment if the party opposing the motion shows that he or she is unable to present facts essential to justify opposition to the motion. And they encouraged the court to appoint a guardian in order to "develop the facts of this case."

On February 8, 2010, the trial court held that OCGA § 19-7-3 provides a basis for the grandparents' claim despite any alleged adoption, a determination that Lightfoot does not contest. The court

held that the lack of contact between the grandparents and the child over the four years prior to the petition was not sufficient standing alone to resolve all of the facts relevant to the petition. The court appointed a guardian ad litem for the purpose of representing the best interest of the child. The guardian was given the right and authority "to completely investigate all aspects of the case. . . ."

Lightfoot contends the trial court erred by denying summary judgment because the grandparents failed to produce clear and convincing evidence that the health or welfare of the child would be harmed absent their visitation. He also contends the lack of contact for over four years was sufficient as a matter of law to resolve the issue before the court. He argues that there is no reason to invite the intrusions that the grandparents seek during the litigation, such as "therapists to examine the child, to examine the parents; guardian[s] ad litem[ ] to examine the homes; discovery and depositions conducted."

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

The relevant Code section provides the grandparents with the right to seek visitation in the present circumstances:

> Except as otherwise provided in this subsection, any grandparent shall have the right to file an original action for visitation rights to a minor child or to intervene in and seek to obtain visitation rights in any action in which any court in this state shall have before it any question concerning the custody of a minor child, a divorce of the parents or a parent of such minor child, a termination of the parental rights of either parent of such minor child, or visitation rights concerning such minor child or whenever there has been an adoption in which the adopted child has been adopted by the child's blood relative or by a stepparent, notwithstanding the provisions of Code Section 19-8-19.

OCGA § 19-7-3 (b). It is OCGA § 19-8-19 that provides for the termination of all legal relationships between an adopted child and his or her relatives. Thus, as the above language makes clear, the grandparents' rights are not affected by an adoption by a stepparent.

The Grandparents Visitation Statute provides that a court may grant a grandparent reasonable visitation rights only when the court finds that "the health or welfare of the child would be harmed unless

such visitation is granted, and if the best interests of the child would be served by such visitation." OCGA § 19-7-3 (c). The evidence must be clear and convincing. *Ormond v. Ormond*, 274 Ga. App. 869, 870 (619 SE2d 370) (2005). The harm requirement means that grandparents must show more than that their contact with the child would be beneficial to the child:

> even assuming grandparent visitation promotes the health and welfare of the child, the state may only impose that visitation over the parents' objections on a showing that failing to do so would be harmful to the child.

*Brooks v. Parkerson*, 265 Ga. 189, 194 (2) (c) (454 SE2d 769) (1995). Indeed, according to the Supreme Court, "[i]t is irrelevant, to this constitutional analysis, that it might, in many instances be 'better' or 'desirable' for a child to maintain contact with a grandparent." Id. See also *Hunter v. Carter*, 226 Ga. App. 251, 253 (1) (485 SE2d 827) (1997) ("The trial court's insistence that the 'child is lucky to have them as grandparents' and that visitation would be 'additive,' i.e., an additional benefit for the child, should not factor into the court's consideration."). Also, the effect on the grandparents, themselves, of separation with the child is irrelevant:

> [A]ny detrimental impact to the grandparents through the loss of visitation opportunities with a grandchild, whether due to the death or divorce of a child's parents, relocation of the family, or other unfortunate circumstances, is irrelevant to the court's determination of whether or not to grant visitation rights to the grandparents.

*Hunter*, 226 Ga. App. at 253 (1).

In their amended petition, the grandparents allege the child will be harmed by lack of a relationship with them. In opposition to the motion for summary judgment, they cite their own affidavits and others in support. But although those affidavits contain information about the child's best interest, they do not provide any direct evidence of harm that the child would suffer as a result of not having visitation with the grandparents. Instead, the grandparents rely on OCGA § 9-11-56 (f) and the trial court's appointment of a guardian, to argue that the facts need to be further developed and that a decision on summary judgment is premature.

OCGA § 9-11-56 (f) provides that if it is shown that the respondents cannot present facts in opposition to the motion, the court may deny summary judgment, allow further discovery, or take

other action:

> Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavits facts essential to justify his opposition, the court may refuse the application for judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just.

OCGA § 9-11-56 (f). See also *Rudd v. Paden*, 279 Ga. App. 141, 143-144 (2) (630 SE2d 648) (2006). A decision under this subsection lies in the sound discretion of the court. *Fine v. Communication Trends*, 305 Ga. App. 298, 301 (1) (a) (699 SE2d 623) (2010).

In this case, the trial court denied the motion for summary judgment and simultaneously appointed a guardian ad litem. Although the trial court did not state that it was operating under OCGA § 9-11-56 (f) in the order, it is apparent from the proceedings that the court chose to allow the case to go forward under that Code section, as it had the discretion to do. We cannot say the trial court abused its discretion in doing so. There was some evidence that Lightfoot had thwarted attempts at visitation in the early years following Dawn Hollins's death. Thus, the lack of a relationship between the grandparents and the child might not be the fault of the grandparents. At any rate the trial court had the discretion to deny the motion for summary judgment and allow the guardian to investigate the facts.

The case of *Hunter v. Carter*, 226 Ga. App. 251, is not controlling. That case involved the question of whether the grandparents had presented any evidence at trial to support their petition. Here, the trial court decided that further proceedings were necessary to develop the case.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JANUARY 26, 2011 —
RECONSIDERATION DENIED MARCH 18, 2011.

*Stearns-Montgomery & Proctor, Mary Stearns-Montgomery, Ryan A. Proctor*, for appellant.
*Anthony M. Zezima*, for appellees.