**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0240. BELOATE v. PEDEN.

MCFADDEN, Judge.

The maternal grandmother of minor child A. B. filed a petition seeking visitation rights with the child. After an evidentiary hearing, the trial court granted the petition and awarded grandparent visitation. The father of A. B. appeals, challenging the sufficiency of the evidence supporting the grandparent visitation order and claiming that the trial court erred in requiring him to bear a portion of the cost of the court-appointed guardian ad litem. Because there is sufficient evidence from which a rational trier of fact could have found that the grandparent visitation was authorized, we affirm the trial court's visitation ruling. With regard to the guardian ad litem fees, there were two rulings, one of which the father acquiesced in; however, he properly challenged the second request for such fees, and because the

petitioning grandparent alone was required to bear the expense of the court-appointed guardian ad litem, we reverse that portion of the trial court's ruling.

1. *Sufficiency of the evidence.*

> On appeal from an order granting grandparent visitation, we view the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the mandated visitation was authorized. We do not weigh the evidence or determine witness credibility, but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.

*Luke v. Luke*, 280 Ga. App. 607, 609-610 (1) (634 SE2d 439) (2006) (citations omitted).

So viewed, the evidence shows that A. B. was born on December 11, 2001. By the time A. B. was approximately three years old, the unwed parents had ended their relationship, the mother was in a drug rehabilitation program, and the father and A. B. had moved into the paternal grandparents' house. The mother later began a relationship with another man, and on May 5, 2008, gave birth to D. C., the half-brother of A. B. In the meantime, the father of A. B. had initiated a custody action, which resulted in a January 2009 consent order, pursuant to which the mother and father had joint legal custody of A. B., the father had sole physical custody, and the mother had visitation rights. According to the maternal grandmother, the father and

his mother stopped allowing visitations, did not respond to telephone calls or letters, and thwarted various attempts to contact the child. On December 15, 2010, A. B.'s mother died of an accidental prescription drug overdose.

After the mother's death, the maternal grandmother filed the underlying petition for visitation, claiming that she had not been allowed to visit with A. B. since the father had gained physical custody. It was stipulated at the hearing on the petition that A. B. had recently begun seeing a counselor to address emotional issues regarding the loss of her mother, that the father wanted the maternal grandmother to be involved with the counseling, and that the maternal grandmother had agreed to do so. At the conclusion of the hearing, the guardian ad litem who had been appointed to represent the child's interests and to investigate the matter, confirmed that the father and his family had blocked telephone calls and had limited the maternal grandmother's contact with the child. The guardian ad litem recommended that the court award visitation rights to the maternal grandmother, opining that the paternal grandmother does not like the maternal grandmother's family, so "there won't be one minute of visitation for them that you don't order."

In granting visitation rights to the maternal grandmother, the trial court found, among other things, that the father's

delay in obtaining counseling for the minor child has caused continued problems in her grieving, and [her] having nightmares that have caused harm and ha[ve] been damaging to the minor child. The Court finds by clear and convincing evidence that the father is surrounded by family members who are not in any way encouraging him to facilitate and allow the minor child to have a relationship with the maternal grandmother and the child's maternal extended family. The Court finds that the minor child would be harmed emotionally as she has been by not having a relationship with them and not being able to discuss that her mother has died, who her mother was, and looking at pictures of her maternal family. The Court finds that it would be in the best interest of the minor child to have visitation and a relationship with her maternal extended family.

OCGA § 19-7-3, which is commonly referred to as the Grandparent Visitation

Statute,

was enacted to provide a mechanism for courts to grant a grandparent visitation rights with his or her minor grandchild, where, as here, a child's parent objects. In this regard, the statute codified a standard for the trial courts to utilize in balancing the wishes of an alienated grandparent, the rights of the parents, and the interests of the child.

*Sheppard v. McCraney*, 317 Ga. App. 91, 92 (730 SE2d 721) (2012) (citations and

punctuation omitted).

In challenging the sufficiency of the evidence in this case, the father relies on

language set forth in subsection (c) of the statute, pertaining to physical or emotional

harm being reasonably likely to result if visitation is not granted. See OCGA § 19-7-3

(c) (1) (D). However, regardless of whether or not the standard under that subsection

4

was met, the father's reliance on that language is misplaced because the more pertinent standard governing this case is set forth in subsection (d) of the statute, which provides:

> Notwithstanding the provisions of subsections (b) and (c) of this Code section, if one of the parents of a minor child dies, is incapacitated, or is incarcerated, the court may award the parent of the deceased, incapacitated, or incarcerated parent of such minor child reasonable visitation to such child during his or her minority if the court in its discretion finds that such visitation would be in the best interests of the child. The custodial parent's judgment as to the best interests of the child regarding visitation shall be given deference by the court but shall not be conclusive.

OCGA § 19-7-3 (d).

Here, the mother of A. B. is deceased, and therefore the trial court was authorized to exercise its discretion and award visitation to the maternal grandparent based on a finding that such visitation would be in the best interests of the child. The trial court's express finding that visitation is in A. B.'s best interests is supported, not only by the maternal grandmother's testimony and the guardian ad litem's recommendation, but by the father's own testimony. He testified that A. B. loved her mother, that she has said she never really got a chance to know her mother, and that it is extremely important for her to learn about her mother and have nice memories of her. The father explained that he had asked the maternal grandmother to participate

5

in A. B.'s counseling because it was suggested by the counselor as a healthy way to approach the mother's death, because the maternal grandmother can expose A. B. to information about her mother "in a way that no one else could or can," and because "I think it would be in the best interest of [A. B.]" Likewise, when asked about visitation, the father testified affirmatively that he was willing to let the maternal grandmother have a regular visitation schedule, and that he wanted "[w]hat's in [A. B.'s] best interest" so that she "is happy and healthy."

Having reviewed all of the evidence in the light most favorable to the trial court's judgment, we conclude that there is sufficient clear and convincing evidence to support the finding that grandparent visitation is in the child's best interests. "Thus, [the father] has failed to show that the visitation order is deficient as claimed." *Luke*, supra at 611 (2) (citation omitted).

2. *Guardian ad litem.*

On January 10, 2012, the trial court entered an order appointing a guardian ad litem to represent the child's interests. In that order, the trial court ordered the maternal grandmother to pay $1,500 and the father to pay $500 for the guardian's fees. No objection was raised to that order and both parties complied with it, paying the ordered amounts.

Over a year later, at the conclusion of the visitation hearing held on April 26, 2013, the guardian ad litem stated that she had incurred additional fees and requested that they be paid by both parties. The father's attorney objected to the request, arguing that under OCGA § 19-7-3 (e) the petitioning grandparent is solely responsible for the guardian fees and asking that the entirety of any remaining fees be assigned to the maternal grandmother for payment. The trial court ruled against the father, ordering that he pay 25 percent of the remaining guardian ad litem fees.

On appeal, the father argues that the trial court erred in ordering him to pay any portion of the remaining guardian ad litem fees and further requests that all fees already paid by him pursuant to the first order be refunded to him. With regard to the request for a refund of previously paid fees, no such request was made in the trial court. Rather, as noted above, the father never objected to the initial 2012 order requiring him to pay a portion of the fees, submitted to that order by paying the fees, and at the 2013 hearing argued only that he should not be held responsible for any newly incurred fees. Accordingly, he acquiesced in the first order requiring him to pay a portion of the guardian ad litem fees and waived any argument concerning a refund by failing to raise it in the trial court. See *McBride v. Murray*, 287 Ga. 99, 102 (694 SE2d 99) (2010) (a litigant cannot submit to a ruling, acquiesce in it, and still

7

complain of the same); *Champion Windows of Chattanooga v. Edwards*, 326 Ga. App. 232, 242 (2) n. 9 (756 SE2d 314) (2014) (issues and objections not raised in and ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal).

As for the trial court's subsequent ruling that the father must pay a portion of the remaining guardian ad litem fees, we agree that such ruling was erroneous. OCGA § 19-7-3 (e) (1) states that "[i]f the court finds that the grandparent or grandparents can bear the cost without unreasonable financial hardship, the court, *at the sole expense of the petitioning grandparent or grandparents*, may … [a]ppoint a guardian ad litem for the minor child[.]" (Emphasis supplied.) This statute plainly provides that if a guardian ad litem is appointed in a grandparent visitation case such as this one, then it shall be at the sole expense of the petitioning grandparent. Nothing in the statute contemplates holding the defendant parent liable for the expense of a court-appointed guardian ad litem. Because the trial court's ruling at the 2013 hearing that the father must pay a portion of the remaining guardian ad litem fees contravenes the plain language of the statute, it must be reversed.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ray, J., concur.*