**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 23, 2016**

# In the Court of Appeals of Georgia

A15A2056. BALLWEG v. GEORGIA DEPARTMENT OF BO-101
HUMAN SERVICES, DIVISION OF FAMILY AND
CHILDREN SERVICES.

BOGGS, Judge.

Albert Ballweg appeals from the order of the Superior Court of Paulding County denying his petition for permanent custody or visitation with respect to his two grandchildren.[1] Because the trial court's decision on custody was supported by some reasonable evidence and was not an abuse of its discretion, we affirm that portion of the order. But the trial court applied an incorrect standard in determining the merits of Ballweg's petition for visitation, and we therefore vacate and remand that portion of the court's order for further proceedings.

---

[1] By agreement of the parties, this petition was heard and ruled upon by the juvenile court judge that heard the underlying termination action, sitting by designation as a superior court judge.

Ballweg is the paternal grandfather of two girls, nine and six years old at the time of the custody hearing. On March 12, 2014, after hearing evidence in January and February of 2014, the Paulding County Juvenile Court terminated the parental rights of the mother and father of the children and placed the children in the custody of appellee Department of Human Services ["DHS"]. After the hearings but before issuance of the termination order, Ballweg filed his "Petition for Immediate, Permanent Custody and/or Visitation Rights." On December 19, 2014, a hearing on this petition was held, at which witnesses testified on behalf of both parties. The trial court ruled from the bench and then entered a written order, denying the petition in its entirety. Ballweg's motion for new trial was denied, and he appeals, asserting three enumerations of error.

1. We first consider Ballweg's complaint regarding an alleged ex parte communication between his grandchildren and the trial judge, based on a statement made by the judge when ruling on his motion for new trial. While indicating that the motion for new trial would be denied, the judge observed:

> I knew the status of these two children and how terribly sad their lives were. Because at the time that we conducted the trial in December of 2014, a year prior to that in November of 2013 I attended a Thanksgiving dinner for foster kids and foster parents. And these two

2

babies said to me when they were introduced to me as this is the judge that's handling your case, while you consider this ex parte if you want to. These two babies said to me please, Judge, get us adopted.

Ballweg knew from the inception of the custody matter that the trial judge presided over the underlying termination action, and thus had extensive knowledge of the children's circumstances. In its order terminating the parental rights of the mother and father, a copy of which was admitted without objection at the custody hearing, the juvenile court found that "permanency is deemed to be the paramount wish and goal of these children, whether specifically articulated by them or not." Knowing this, Ballweg agreed to have the same judge hear the custody matter while sitting by designation in superior court.[2]

But even assuming without deciding that the reported statement by the children, made before the underlying termination trial and before this action was filed, constituted an ex parte communication, see Uniform Superior Court Rule 4.1

---

[2]We note that the trial court also had the authority under Georgia Uniform Superior Court Rule 24.5 (B) to consult with the children in chambers, with the consultation recorded and with attorneys having the option to attend but not question the children.

("pending or impending proceeding"), Ballweg has waived this claim by failing to pursue it promptly.

Rule 25.1 of the Uniform Rules for the Superior Courts in Georgia provides:

All motions to recuse or disqualify a judge presiding in a particular case or proceeding shall be timely filed: in writing and all evidence thereon shall be presented by accompanying affidavit(s) which shall fully assert the facts upon which the motion is founded. Filing and presentation to the judge shall be not later than five (5) days after the affiant first learned of the alleged grounds for disqualification, and not later than ten (10) days prior to the hearing or trial which is the subject of recusal or disqualification, unless good cause be shown for failure to meet such time requirements. In no event shall the motion be allowed to delay the trial or proceeding.

Here, Ballweg and his counsel were present in court on March 19, 2015, when the communication complained of was revealed. The trial court did not enter its written order until April 6, 2015, and Ballweg's notice of appeal was not filed until May 6, 2015. Despite Ballweg's contention that a motion to recuse would have been pointless because "there was no where left to turn," if he wished to pursue his claim, it was his obligation to interpose a timely motion in the trial court. See *State v. Hargis*, 294 Ga. 818, 821-822 (1) (756 SE2d 529) (2014). And he also was required to show "good cause" for failure to meet the time requirements for filing the motion.

4

*Christensen v. State*, 245 Ga. App. 165, 171 (10) (a) (537 SE2d 446) (2000). Having done neither, Ballweg has not preserved this claim for review.

2. Next, we consider the trial court's decision to deny custody to Ballweg and continue custody of the children with DHS. In custody disputes between two parties, neither of which is a parent of the child, the applicable standard is the best interest of the child. *Stills v. Johnson*, 272 Ga. 645, 650 (2) (533 SE2d 695) (2000); compare *Strickland v. Strickland*, ___ Ga. ___ (1) (Case No. S15G1011, decided March 7, 2016) (custody as between natural parent and close third party relatives decided under statutory presumption in OCGA § 19-7-1 (b.1) that custody with parent is in best interest of child.)

In reviewing the custody ruling of the trial court, we are required to "view the evidence in the light most favorable to the trial court's decision. [Cit.]" Id., slip op. at 7 (1). So viewed, the record shows that the trial court determined that the children suffered from "severe emotional and behavioral issues and were acting out sexually," for which they were receiving therapy, and that they had "serious and special needs." In light of the children's significant problems, the trial court further found that "it would not be in the best interest of these children to be placed in the custody and care of a man in the circumstances of" Ballweg, given his unstable living situation and his

5

failure to act to intervene in the children's "dysfunctional environment" for a period of almost a year.

The trial court's findings were supported by some evidence, even though aspects of that evidence were disputed. The final order in the termination action, which was admitted without objection by Ballweg, details the foster parents' and a psychologist's descriptions of the children's aberrant behavior. The children are under constant adult supervision, in the case of the younger child on a 24-hour basis, and will require long-term therapy. The children's social services supervisor testified at the custody hearing and confirmed that the children have "extreme emotional and behavioral problems" for which they are receiving therapy.

Ballweg testified that he resided in Tennessee, although he had lived for the six months before the hearing in a daughter's apartment in Georgia. In Tennessee, he lived in a travel trailer given to him by an elderly widow to whom he was recommended by a leader in their church to provide assistance with her farm property after her husband died and her house burned down. The landowner allowed Ballweg to live on her property rent-free in exchange for mechanical and maintenance work, including building a new house for her. He was not paid any wages or other money, and they lived "off the grid." The trailer lacked working plumbing; when the children

stayed with Ballweg they lived in the landowner's home nearby, where they had a large bedroom.

Evidence was presented at the hearing that Ballweg had the children in his care for a four-month period in 2011. In December of that year, the mother came and took the children, saying she would bring them back shortly, but she failed to return them. Thereafter, Ballweg made no inquiries and took no action on behalf of the children until after they were removed from the parents' custody in late 2012, explaining that he "was waiting on them [the parents] to do what they say they were going to do." Ballweg and the landowner denied observing any unusual behavior by the children. Ballweg stated that he would rely on the landowner "to help [him] in matters like that," although he was "not quite sure how [he] would address that." He did not take the children to a doctor, despite knowing that one of them had a medical condition. Ballweg acknowledged that, if anything were to happen to the landowner, he would not "have any other place to go, no, if I have two children." His income consists of Social Security and a small military pension, although he occasionally drives a taxi.

In summary,

[t]his was a . . . protracted custody battle in which the parties presented sharply divergent accounts of the events. We are mindful that the

7

Solomonic task of making custody decisions lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility. We will not disturb the superior court's exercise of discretion if there is any evidence to support its decision. Our review of the record, summarized above, shows that the court's ruling in this case was supported by evidence in the record. Thus, the court did not err by denying [appellant's motion].

(Citations and punctuation omitted.) *Smith v. Pearce*, 334 Ga. App. 84, 92 (3) (778 SE2d 248) (2015). We therefore affirm the trial court's decision with regard to custody.

3. Finally, Ballweg complains that the trial court applied an erroneous legal standard to his petition for visitation. "When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the plain legal error standard of review." (Citations, punctuation, and footnote omitted.) *Mandt v. Lovell*, 317 Ga. App. 168, 169 (728 SE2d 772) (2012), aff'd, 293 Ga. 807 (750 SE2d 134) (2013). In reaching its decision on visitation as between Ballweg and DHS, the trial court applied the provisions of OCGA § 19-7-3 (c) (1):

Upon the filing of an original action or upon intervention in an existing proceeding under subsection (b) of this Code section, the court may grant any grandparent of the child reasonable visitation rights if the

8

court finds the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation. In considering whether the health or welfare of the child would be harmed without such visitation, the court shall consider and may find that harm to the child is reasonably likely to result where, prior to the original action or intervention:

(A) The minor child resided with the grandparent for six months or more;

(B) The grandparent provided financial support for the basic needs of the child for at least one year;

(C) There was an established pattern of regular visitation or child care by the grandparent with the child; or

(D) Any other circumstance exists indicating that emotional or physical harm would be reasonably likely to result if such visitation is not granted.

The court shall make specific written findings of fact in support of its rulings.

The trial court explicitly followed this standard in its ruling from the bench, and in its written order, holding that "the Court finds that [Ballweg] has not met the tests of O.C.G.A. Section 19-7-3." This was error.

9

This court's opinion in *Perrin v. Stansell*, 243 Ga. App. 475 (533 SE2d 458) (2000), is directly on point. There, we specifically held that this standard is not applicable as between third parties who are not parents, because "a third party never acquires the constitutional status of a parent, even if [it has] legal custody. . . ." Id. at 477 (1) (a). We observed:

> OCGA § 19-7-3 was adopted by the Georgia Legislature to provide a mechanism for courts to grant a grandparent visitation rights with his or her minor grandchild over the objections of the child's *parent(s)*. The statute codified a standard for the trial courts to utilize in balancing the wishes of an alienated grandparent, the rights of the parents, and the interests of the child. Such standard requires the petitioning grandparent to meet an extremely high evidentiary burden, i.e., to demonstrate by clear and convincing evidence that the potential for harm to the child absent visitation is so great that it *outweighs the parents' constitutionally protected interests in raising that child.*

(Citations, punctuation, and footnote omitted; emphasis in original.) Id. at 476-477 (1) (a). While DHS argues that Ballweg cannot meet even the less stringent "best interest" test, we do not reach that issue, because it is apparent from the record that the trial court applied an incorrect legal standard in evaluating the evidence. The portion of its order relating to visitation therefore must be vacated.

10

For the reasons stated above, we affirm in part and vacate in part the judgment of the trial court and remand this case for further proceedings consistent with this opinion. In so doing, we make no determination as to the merits of the parties' respective claims.

*Judgment affirmed in part; vacated in part; and case remanded with direction. Doyle, C. J. and Phipps, P. J., concur.*