**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**January 15, 2015**

# In the Court of Appeals of Georgia

A14A2110. EVANS v. SANGSTER et al.        JE-108

A15A0079. EVANS v. SANGSTER et al.        JE-005

ELLINGTON, Presiding Judge.

In Case No. A14A2110, Joanna Evans ("Joanna") appeals from an order of Superior Court of Crisp County, which entered a judgment affecting two cases that were consolidated below: (1) a petition brought by Connie and Bob Sangster ("the Sangsters"), in which they sought visitation with their biological grandson, Joanna's minor child, C. S.; and (2) a petition for stepparent adoption brought by Joanna's husband, Jason Evans ("Jason"), in which the Sangsters intervened. In related claims of error, Joanna contends that the trial court erred in granting the Sangsters visitation with C. S. She also contends that the trial court erred in consolidating the proceedings

below, and in issuing an adoption decree that was "subject to" the court's final decision with respect to grandparent visitation. Finally, she argues that, although the court granted her husband's petition to adopt, the court erred in entering a decree allowing C. S. to retain his father's surname.

In Case No. A15A0079, Jason appeals from the final decree of adoption. Jason raises the same claims of error that Joanna raises in her appeal. Because these matters were consolidated by the trial court below and decided based upon the same facts, we consolidate these appeals for the purposes of this opinion. See, e.g., *Ray v. Hahn*, 323 Ga. App. 45 (746 SE2d 600) (2013).

The facts relevant to both appeals are as follows. The Sangsters are the paternal grandparents of the minor child, C. S. C. S. is the son of Joanna and of the Sangsters' son, Robert Michael Sangster, Jr. ("Michael"). Joanna and Michael divorced on March 25, 2010, about two years after C. S. was born. The final decree awarded the parties joint legal custody of C. S., with Joanna being the child's primary physical custodian. The final divorce decree incorporated a separation agreement which provided as follows:

> The parties agree that[,] in the event of the husband's death during the minority of their child, the Husband's parents shall be entitled to

2

reasonable visitation rights with said child, and that in the event of the Wife's death during the minority of the child, the Wife's parents shall be entitled to reasonable visitation rights with the child.

After the divorce, the Sangsters regularly visited with C. S., primarily when he was staying with his father during his custodial visits. On August 27, 2011, Joanna married Jason. Michael died of cancer in July 2012.

Not long after Michael's death, the Sangsters experienced resistance from Joanna in their efforts to continue regular visitation with C. S. Consequently, they sought the advice of counsel and, with counsel's assistance, they entered into an agreement with Joanna setting forth a regular visitation schedule. On July 15, 2013, the Sangsters filed a petition seeking court-ordered grandparent visitation, which initiated the underlying suit, Civil Action No. 13V-159. When Joanna was served with the suit, she immediately withheld all visitation with C. S. from the Sangsters. Consequently, the Sangsters amended their complaint to include a contempt count. In her amended answer, Joanna "denie[d] that the [Sangsters] are 'entitled to remain an integral part of [C. S.'s] life as though his father were still alive[,]'" and asserted that any visitation between C. S. and his grandparents was entirely at her discretion.

3

On July 26, 2013, eleven days after the Sangsters filed their petition for visitation, Jason filed his petition for stepparent adoption, Civil Action No. 13AV-005. The Sangsters moved to intervene in the adoption on August 9, 2013, seeking to preserve their visitation with C. S. The Sangsters also filed an objection to the adoption on September 5, 2013. The court granted the Sangsters' motion to intervene in the adoption proceeding on February 20, 2014.

On August 26, 2013, the court held a temporary hearing in Case No. 13V-159 on the issue of grandparent visitation. A psychologist who had met with the Sangsters testified that C. S. would be harmed if he was unable to see his grandparents. He opined that grandparent visitation is especially important to a child who has lost a parent. He further testified that C. S. would benefit from regular and predictable visitation with his father's side of the family. During her hearing testimony, Joanna admitted that the Sangsters do, indeed, have a close bond with C. S. She admitted that she had entered into an agreement with the Sangsters allowing them reasonable visitation. She also admitted withholding that visitation when the Sangsters sought a court-ordered visitation schedule. Joanna explained that what constitutes "reasonable visitation" should be in her sole discretion, that she should be permitted to allow visitation only when it is convenient for her and her new family, and that

4

reasonable visitation could mean no visitation if the circumstances demanded it. The court also took into consideration 64 affidavits submitted by friends and family of the Sangsters, attesting to the Sangsters' character and to their relationship with C. S. At the conclusion of the hearing, the court ruled from the bench that grandparent visitation would resume immediately and that a written order would follow.

On September 9, 2013, the trial court entered a temporary order in Case No.13V-159, finding that "[C. S.] had a close relationship and a bond with [the Sangsters,]" and that the Sangsters had maintained that bond after C. S.'s father had died. The trial court also found that Joanna had entered into an agreement allowing the Sangsters visitation, but had withheld visitation when she was served with the instant petition. The court found her in contempt for her wholesale denial of visitation to the Sangsters, which the trial court found to be "inherently unreasonable"; however, the court withheld the imposition of any sanctions. The trial court ordered that the Sangsters were entitled to reasonable visitation with C. S., and set forth a temporary visitation schedule. Joanna did not comply with the court-ordered visitation schedule, and on October 4, 2013, the trial court granted the Sangsters' motion for contempt, finding that Joanna willfully and knowingly violated the temporary order and imposed sanctions.

On February 20, 2014, the court consolidated the Sangsters' petition for grandparent visitation and Jason's petition for adoption. Thereafter, the parties submitted letter briefs, but it does not appear from the record in either case that any additional evidence was presented to the court. On May 19, 2014, the trial court entered two orders. In one order, styled jointly under Civil Action Nos. 13AV-005 and 13V-159, the court addressed the issue of visitation only. In that order, the court made specific findings of fact, including that C. S. had a close bond with the Sangsters, that there had been a regular pattern of visitation between them, that C. S. would be harmed if visitation were to cease, and that it was in the best interest of C. S. to have scheduled visitation with the Sangsters, especially given the death of his father. In the second order, entered in Civil Action No. 13AV-005 only, the court granted Jason's petition and issued the decree of adoption. The final decree of adoption provided that "nothing in the foregoing decree shall in any way interfere with visitation rights previously granted by this Court in a Final Order in Case No. 13V-159." The decree also provided that C. S.'s surname would not be changed to "Evans," as Jason requested.

*Case No. A14A2110*

6

1. Joanna contends that, given her husband's petition to adopt C. S., the trial court lacked the legal authority to grant the Sangsters' petition for grandparent visitation. Joanna does not argue that, at the time they filed their petition for visitation, the Sangsters lacked the right to do so pursuant to OCGA § 19-7-3 (b) (1). Nor does she take issue with the court's factual findings or with the quantum of evidence supporting the award of visitation. Rather, she argues that the trial court should have granted Jason's petition for adoption first, and, had the court done so, the adoption decree would have had the effect of extinguishing the Sangsters' right to seek visitation with their grandchild. Because this claim of error pertains to the effect of the adoption decree and because the same argument is raised by Jason, we address it in Case No. A15A0079 below. For the reasons set forth in Division 4, infra, this claim of error is without merit.

2. Joanna also argues that the court gave no deference to her wishes in crafting the visitation schedule contained within the order awarding grandparent visitation. This assertion is not supported by the record. The court's order indicates that it expressly recognized that Joanna's "judgment as to the best interest of the child regarding visitation shall be given deference"; however, it "shall not be conclusive[,]" citing OCGA § 19-7-3 (d). The record shows that the court entertained proposed

7

orders from the parties concerning visitation, and that the court's final order was a compromise between the two. The final order also takes into account those unforseen circumstances that may conflict with court-ordered visitation, allowing Joanna discretion to give priority to C. S.'s educational and medical needs. Joanna also complains that the amount of visitation awarded exceed the minimum allowed by law, citing OCGA § 19-7-3 (c) (4). That Code section, however, sets no maximum limit on visitation[1], and Joanna has set forth no argument demonstrating that the court-ordered visitation is unauthorized or excessive. Consequently, we find this claim of error to be without merit.

3. Joanna's remaining claims of error pertain to the adoption proceeding. Those claims of error are addressed in Jason's appeal below.

*Case No. A15A0079*

4. Jason contends that the court should have granted the adoption petition first, and, had the court done so, the Sangsters would have had no standing to object to the

---

[1] OCGA § 19-7-3 (c) (4) provides: "In no case shall the granting of visitation rights to a grandparent interfere with a child's school or regularly scheduled extracurricular activities. Visitation time awarded to a grandparent shall not be less than 24 hours in any one-month period."

adoption or to seek visitation.[2] He also argues that the trial court erred in consolidating the adoption and visitation proceedings below because the cases do not involve common questions. He also argues that no authority exists for permitting a "conditional adoption"; therefore, the court erred in issuing an adoption decree that incorporated the court's final decision with respect to grandparent visitation. For the following reasons, we disagree.

(a) Jason argues that the trial court was required by OCGA § 19-8-14 (a) to hear the adoption proceeding within 120 days of its filing date, and, had the court

---

[2] "Generally, the adoption of a minor child extinguishes any visitation rights of the child's former grandparents — OCGA § 19-8-19 (a) (1) provides that a decree of adoption has the effect of severing all former relationships of the adopted child." *Hudgins v. Harding*, 313 Ga. App. 613, 614 (722 SE2d 355) (2012). OCGA § 19-8-19 (a) (1) provides:

Except with respect to a spouse of the petitioner and relatives of the spouse, a decree of adoption terminates all legal relationships between the adopted individual and his relatives, including his parent, so that the adopted individual thereafter is a stranger to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship[.]

complied with that time-frame, the adoption decree would have been issued before the Sangster's visitation order and would have cut off the Sangsters' right to seek visitation. The 120-day time frame for hearing adoption petitions applies, however, only to uncontested adoptions.[3] The Sangsters both intervened in the adoption and filed an objection to it specifically to preserve their visitation rights pursuant to OCGA § 19-7-3. Consequently, this argument lacks merit.

(b) Jason argues that OCGA § 9-11-42 (a),[4] the general statute concerning the consolidation of civil actions, required both his and Joanna's consent to consolidate and a common question of law or fact, and that neither were present in this case. Moreover, he argues that OCGA § 19-8-18, pertaining to adoption hearings and

---

[3] OCGA § 19-8-14 (a) provides, in relevant part that "[i]t is the policy of this state that, in the best interest of the child, uncontested adoption petitions should be heard as soon as possible but not later than 120 days after the date of filing[.]"

[4] OCGA § 9-11-42 (a) provides:

When actions involving a common question of law or fact are pending before the court, if the parties consent, the court may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

10

decrees, does not contemplate permitting such consolidation. However, Jason ignores OCGA § 19-7-3 (b) (1), which specifically authorizes the determination of grandparent visitation rights within the context of a stepparent adoption proceedings if the grandparents have been allowed to intervene. The Supreme Court of Georgia has held that

> [a] plain reading of OCGA §19-7-3 (b) offers two avenues by which grandparents may seek court-sanctioned visitation rights to their grandchildren. They can (1) file an original action *or they can* (2) *intervene in an existing court action. Grandparents may intervene* in any action where custody of the grandchild is an issue; in the divorce of the parents or a parent; in the termination of rights case of either parent; in the termination of visitation rights of either parent; and *in the adoption of the grandchild by a blood relative or by a stepparent.*

(Emphasis supplied.) *Kunz v. Bailey*, 290 Ga. 361, 362 (720 SE2d 634) (2012). And the legislature provided that this right of intervention exists "notwithstanding the provisions of Code Section 19-8-19[,]" which pertains to the effect of an adoption decree. Thus, grandparents may intervene in an action for stepparent adoption even though the subsequent granting of such an adoption would ordinarily have the effect of severing the rights of the grandparents to the grandchild.[5]

---

[5] See footnote 1, supra.

When the Sangsters filed their original action for visitation, the adoption petition had not yet been filed. At that time, Jason was not yet the legal parent[6] of C. S.; thus, the exception to OCGA § 19-7-3 (b) (1) did not apply to bar the original action, subjecting it to dismissal. That exception, codified at OCGA § 19-7-3 (b) (2) provides: "This subsection shall not authorize an original action where the parents of the minor child are not separated and the child is living with both parents."[7] When Jason subsequently filed his petition to adopt, the Sangsters promptly filed a motion to intervene in the adoption to protect their visitation rights. The court granted the Sangsters' motion to intervene on the ground that it was necessary to do so to preserve the Sangsters' standing to seek visitation with their grandchild. Contemporaneously with the order granting intervention, the court ordered the cases consolidated.

---

[6] Jason was not the legal parent of C. S. until the court entered an adoption decree declaring him as such. OCGA § 19-8-1 (6) (A). Pursuant to Georgia adoption law, a "'[p]arent' means either the legal father or the legal mother of the child." OCGA § 19-8-1 (8).

[7] See *Kunz v. Bailey*, 290 Ga. at 362. ("[B]y virtue of the limiting language in the last sentence of OCGA §19-7-3 (b), grandparents may only file an original action for visitation when the parents are separated and the child is not living with both parents.").

Because OCGA § 19-7-3 (b) (1) permitted the Sangsters to intervene in the adoption proceeding to protect their visitation with C. S., it was not error to consolidate the cases, as Jason argues. Under the circumstances, the consolidation order was a housekeeping order that allowed the court to consider evidence from both cases without requiring the parties to re-file pleadings, affidavits, hearing transcripts, and other documents of record. Consequently, we find no error in the court's order consolidating the cases.

(c) Jason argues that the court was not authorized to incorporate the order awarding grandparent visitation into the adoption decree. However, OCGA § 19-7-3 (c) (1) expressly provides that, "upon intervention in an existing proceeding under subsection (b) of this Code section, the court may grant any grandparent of the child reasonable visitation rights," assuming that the requisite facts supporting the award of visitation exist.[8] An "existing proceeding" under OCGA § 19-7-3 (b) (1)

---

[8] OCGA § 19-7-3 (c) (1) directs the court to make specific factual findings concerning whether "the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation." OCGA § 19-7-3 (d) provides that

> [n]otwithstanding the provisions of subsections (b) and (c) of this Code section, if one of the parents of a minor child dies, is incapacitated, or is incarcerated, the court may award the parent of the deceased,

13

specifically includes an action for stepparent adoption. *Kunz v. Bailey*, 290 Ga. at 362. Consequently, OCGA § 19-7-3 (c) (1) specifically authorizes a court in an stepparent adoption proceeding to award grandparent visitation as part of the adoption decree.

Contrary to Jason's argument, OCGA § 19-8-15 does not limit the court's authority to award visitation granted pursuant to OCGA § 19-7-3. OCGA § 19-8-15[9]

incapacitated, or incarcerated parent of such minor child reasonable visitation to such child during his or her minority if the court in its discretion finds that such visitation would be in the best interests of the child. The custodial parent's judgment as to the best interests of the child regarding visitation shall be given deference by the court but shall not be conclusive.

[9] OCGA § 19-8-15 provides:

If the child sought to be adopted has no legal father or legal mother living, it shall be the privilege of any person related by blood to the child to file objections to the petition for adoption. A grandparent with visitation rights to a child granted pursuant to Code Section 19-7-3 shall have the privilege to file objections to the petition of adoption if neither parent has any further rights to the child and if the petition for adoption has been filed by a blood relative of the child. The court, after hearing such objections, shall determine, in its discretion, whether or not the same constitute a good reason for denying the petition and the court shall have the authority to grant or continue such visitation rights of the

14

pertains to "objections" that certain relatives of the child sought to be adopted may make to the petition to adopt in those circumstances where both of the child's parents are either deceased or no longer have parental rights. Further, that Code section gives the court the authority and discretion to continue grandparent visitation after an adoption by a blood relative, demonstrating that such a "conditional" adoption decree is not unique to OCGA § 19-7-3.

5. Jason argues that, despite the court's broad discretion in adoption proceeding,[10] it was required to change C. S.'s surname as requested in the petition, citing OCGA § 19-8-18 (b). We agree. Once the court is satisfied that the prerequisites for an adoption exist, "it shall enter a decree of adoption, . . . naming the child as prayed for in the petition[.]" Id. See OCGA § 19-8-13 (a) (1) (B) (The petition shall set form "[t]he name by which the child is to be known should the adoption ultimately be completed.") Consequently, we must vacate the adoption

grandparent to the child in the adoption order in the event the adoption by the blood relative is approved by the court.

[10]In an adoption case, the trial judge sits as trier of fact and is vested with a broad range of legal discretion which will not be controlled by the appellate courts except in cases of plain abuse. *Sastre v. McDaniel*, 293 Ga. App. 671 (667 SE2d 896) (2008).

15

decree and remand the case to the superior court with the instruction that the decree be revised accordingly.

*Judgment affirmed in Case No. A14A2110. Judgment affirmed in part and vacated in part in Case No. A15A0079 and case remanded with direction. Phipps, C. J., and McMillian, J., concur.*