**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 1, 2015**

# In the Court of Appeals of Georgia

A15A0557. KEITH v. CALLAHAN.

McMILLIAN, Judge.

Susan J. Callahan filed a petition seeking visitation rights to her minor granddaughter, A. C., pursuant to OCGA § 19-7-3. Following a hearing, the trial court entered judgment in favor of Callahan. A. C.'s mother (the "mother"), who is Callahan's daughter, appeals that order, asserting that the trial court erred as a matter of law in awarding visitation to Callahan. Having considered her arguments, we find no error and affirm.

In reviewing an order granting grandparent visitation, "we view the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the mandated visitation was authorized." (Citation omitted.) *Esasky v. Ford*, 321 Ga.

App. 891, 892 (743 SE2d 550) (2013). And in doing so, "[w]e do not weigh the evidence or determine witness credibility, but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review." (Citation omitted.) Id.

So viewed, the evidence shows that A. C. was born on December 25, 2007. The mother and father, having never married, separated in July 2011. In September 2011, the mother began a relationship with Michael Keith,[1] whom she later married in November 2013. Beginning when A. C. was born and continuing through 2009, Callahan watched A. C. every day that the mother worked. From 2009 through January 2014, Callahan continued to watch A. C. two to three days per week, including overnight every Friday night. Callahan has a bedroom set up just for A. C. at her home. She frequently paid for A. C.'s meals and activities and took her shopping for trinkets and clothing. And while the mother was attending nursing school in 2011 and 2012, Callahan provided so much financial assistance that she claimed A. C. as a dependent on her tax returns with the mother's permission.

However, on February 5, 2014, as she was returning A. C. to the mother and Michael's home, Michael angrily confronted her and told her that she would not be

---

[1] For clarity, we will refer to Michael Keith as "Michael" in this opinion.

2

allowed to take A. C. again unless she also included his two sons from his previous marriage. Shortly thereafter, Callahan filed a petition for visitation with A. C. pursuant to OCGA § 19-7-3. The parties' attempt at court-ordered mediation was unsuccessful , and the case proceeded to a final hearing on August 4, 2014, at which Callahan, the mother, and Michael each testified.[2] On August 8, 2014, the trial court entered an order setting forth findings of fact and concluding, under a standard of clear and convincing evidence, that A. C.'s welfare would be harmed unless visitation with Callahan is granted and that it is in A. C.'s best interest that such visitation be granted.[3]

1. The mother first argues that the trial court erred in granting visitation because her decision should be conclusive. However, Georgia law expressly provides that "[w]hile a parent's decision . . . shall be given deference by the court, the parent's decision shall *not* be conclusive when failure to provide grandparent contact would

_____

[2] The record shows that the father was served with an amended petition in which he was named as a party. However, he did not file a response or appear at the hearing and is not a party to this appeal.

[3] The order also established a visitation schedule, which included every other Friday from 4:00 p.m. until 6:00 p.m. on Saturday, one week during summer break, and several days during winter break.

3

result in emotional harm to the child." (Emphasis supplied.) OCGA § 19-7-3 (c) (3).[4]

And, a trial court "may grant any grandparent . . . *reasonable* visitation rights if the court finds the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation." (Emphasis supplied.) OCGA § 19-7-3 (c) (1).[5] Thus, the mother's reading of the statute as conferring upon her conclusive authority to grant Callahan visitation with A. C. is incorrect. As this Court has explained, this statute "was enacted to provide a mechanism for courts to grant a grandparent visitation rights with his or her minor grandchild, where, as here, a child's parent objects. In this regard, the statute codified a standard for the trial courts to utilize in balancing the wishes of an alienated grandparent, the rights of the parents, and the interests of the child." (Citations and

---

[4] This code section also creates a rebuttable presumption "that a child who is denied any contact with his or her grandparent or who is not provided some minimal opportunity for contact with his or her grandparent may suffer emotional injury that is harmful to such child's health." OCGA § 19-7-3 (c) (3).

[5] In making these findings, the trial court is required to consider whether (1) the child resided with the grandparent for six months or more; (2) the grandparent provided financial support for the basic needs of the child for at least one year; (3) there was an established pattern of regular visitation or child care by the grandparent; or (4) any other circumstance exists indicating that emotional or physical harm would be reasonably likely if visitation is not granted. See OCGA § 19-7-3 (c) (1) (A) - (D).

4

punctuation omitted.) *Sheppard v. McCraney*, 317 Ga. App. 91, 92 (730 SE2d 721) (2012).

The mother argues, nonetheless, that because she testified that Callahan was "free and welcome to visit" with A. C., albeit only at her home, the trial court had no authority to implement a competing visitation schedule. But the mother has provided no authority that requires the trial court to balance the competing interests and rights of the grandparent, parent, and child in such a way that OCGA § 19-7-3 would only apply where absolutely all visitation has been cut off, and we find none. In essence, the mother is asserting that the trial court rejected her wishes for creating a visitation schedule, which would only include visitation at her home and would be conditioned on Callahan's inclusion of Michael's sons in the visitation.

We recently addressed similar circumstances, in which a set of grandparents regularly visited with their grandchild until they experienced "resistance" from the child's mother following the death of their son. *Evans v. Sangster*, 330 Ga. App. 533, 534 (768 SE2d 278) (2015). With the assistance of counsel, the mother and grandparents entered into an agreement setting out a regular visitation schedule, but the grandparents later filed a petition seeking court-ordered visitation. Id. The mother then withheld all visitation and, in her answer, asserted that visitation between her

child and the grandparents "was entirely at her discretion." Id. The trial court disagreed and entered an order granting the grandparents regularly scheduled visitation. Id. at 535. On appeal, we rejected the mother's contention that the court gave no deference to her wishes in crafting the visitation schedule and affirmed the trial court's order. Id. at 536-537 (2) (noting the order expressly recognized the mother's judgment as to the best interest of the child regarding visitation shall be given deference but is not conclusive). See also *Luke v. Luke*, 280 Ga. App. 607, 608-609 (634 SE2d 439) (2006) (affirming trial court's grant of regularly scheduled grandparent visitation where record showed mother had previously agreed the grandparent could spend "some time" with her children).

Here, the trial court utilized the correct clear and convincing standard of proof in finding that A. C.'s welfare would be harmed unless reasonable visitation with Callahan was granted and that it is in the best interest of A. C. that such visitation be granted. And in reaching that determination, the trial court noted that it considered the "facts and circumstances of the case" and the parties' respective "interest in the case." Although the mother testified that Callahan was "welcome" to visit A. C. at her home, Callahan testified that she has not returned to their home since the evening of February 5, 2014 because she is afraid of having another confrontation with

6

Michael. In its findings of fact, the trial court expressly noted that Callahan "is clearly frightened of [Michael]" and that her concerns "are certainly understandable in light of his testimony in court including his attitude and overall demeanor which was very combative and aggressive." Thus, the mother's argument is without merit, and the trial court did not err in declining to give the mother's decision conclusive effect. See *Evans*, 330 Ga. App. at 536-537 (2).

2. The mother also contends that the trial court only considered A. C.'s best interest from Callahan's point of view and, therefore, made erroneous findings of fact. She first takes issue with the trial court's finding that Michael was argumentative and that Callahan feared a confrontation with him. The mother argues that this finding is unsupported because the trial court only relied on Callahan's testimony and disregarded hers and Michael's testimony. However, in its order, the trial court made express findings as to the credibility and demeanor of the witnesses, including Michael. And this fact-finding is a duty specifically reserved for the trial court. See, e.g., *Esasky*, 321 Ga. App. at 892 (appellate court does not weigh evidence or determine witness credibility, but defers to the trial court's fact-finding).

The mother also complains that the trial court failed to consider that she has two stepsons and that A. C. will see that her stepbrothers are not going with her to

Callahan's home. However, the trial court's order clearly shows that it considered the fact that Michael has two sons from his prior marriage who live with Michael and the mother and that the boys have regular visitation with their mother. Viewed in the light most favorable to the judgment – wherein the trial court found through Callahan's testimony, and at times the mother's testimony as well, that Callahan has spent significant, meaningful time with A. C. since her birth, has kept a bedroom for her in her home, has cared for her two to three days every week (including a weekly overnight visit), has provided her with substantial financial assistance, has been a strong influence in her life, has maintained a very close relationship with her, and that it would be harmful to A. C. to sever this relationship – the evidence authorized the court's express finding that it is in the best interest of A. C. that visitation with Callahan be granted.[6] See *Luke,* 280 Ga. App. at 611-612 (3).

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

---

[6] The mother's dissatisfaction with the amount of time Callahan wishes or is able to spend with Michael's sons is not an issue addressed by OCGA § 19-7-3, and it may remain a matter that cannot be readily resolved through our legal system.