**THIRD DIVISION
GOBEIL, J.,
COOMER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 13, 2019**

# In the Court of Appeals of Georgia

A18A1524. ELMORE v. CLAY, et al.                    HO-055

HODGES, Judge.

Kelly Elmore petitioned to both terminate the rights of Tabitha Clay, the biological mother of her step-daughter, E. E., and to adopt E. E. Paternal grandmother Leslie Clay and maternal grandfather Tim Clay moved to intervene in the action to obtain grandparent visitation.[1] Following a hearing , the trial court terminated the parental rights of Tabitha Clay, permitted Kelly Elmore ("Kelly") to adopt E. E., and granted visitation to E. E.'s grandparents over the objections of Kelly and E. E.'s father. Kelly appeals the trial court's grant of visitation to E. E.'s grandparents. For the reasons that follow, we vacate the trial court's order and remand the case for further proceedings consistent with this opinion.

---

[1] Leslie Clay and Tim Clay are married to each other.

When reviewing an order granting grandparent visitation,

> we view the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the mandated visitation was authorized. We do not weigh the evidence or determine witness credibility, but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.

(Citations omitted.) *Luke v. Luke*, 280 Ga. App. 607, 609-610 (1) (634 SE2d 439) (2006).

So viewed, the record shows that Ryan Elmore ("Ryan") and his daughter E. E. lived with E. E.'s grandparents off and on during the child's early life. E. E.'s grandmother, Leslie Clay ("Leslie"), played a large part in helping to raise E. E. during this time and she provided child care as well as financial support for E. E. In the past, Leslie was a maternal figure for E. E. In 2013, however, Ryan wed Kelly and E. E. moved out of her grandparent's home, thereby discontinuing Leslie's quasi-motherly role and the grandparents' financial support of E. E.

Several years later, in 2017, Kelly filed a petition to terminate the rights of E. E.'s biological mother and to adopt E. E. Leslie and her husband, Tim Clay, responded by moving to intervene to seek visitation with their grandchild. The trial

court held a hearing at which it was undisputed that E. E. maintains a close relationship with her grandparents. The parties disagreed as to whether Ryan and Kelly were keeping E. E. from her grandparents, but it was undisputed that the grandparents were offered numerous opportunities to visit with E. E. in 2016 and 2017. Leslie, as well E. E.'s great-grandmother and great-aunt, testified that E. E. appeared less happy and bubbly than she was when she was able to see her grandparents more frequently. At the end of the hearing, the trial court indicated that it was inclined to deny the petition for visitation.

Following the hearing, the trial court terminated the parental rights of the biological mother, who did not answer the petition or appear at the hearing, and permitted Kelly to adopt E. E. Contrary to its commentary at the hearing, the trial court also granted visitation to Leslie and Tim Clay from 9:00 A.M. on Saturday through 6:00 P.M. on Sunday one weekend a month as well as for one week over the summer. Kelly appeals the portion of the order granting grandparent visitation.[2]

1. In two related enumerations of error, Kelly contends that the trial court erred in finding that visitation should be mandated against the wishes of Kelly and Ryan.

_____

[2] Appellees Leslie and Tim Clay did not file a brief in this appeal.

3

Because we are unsure if the trial court properly exercised its discretion in reaching its conclusion, we vacate the trial court's order and remand the case.

Under Georgia law, the trial court was permitted to grant the grandparents visitation[3] if it found

> by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation. . . . In considering whether the health or welfare of the child would be harmed without such visitation, the court *shall consider* and *may find* that harm to the child is reasonably likely to result when, prior to the original action or intervention: (A) The minor child resided with the family member for six months or more; (B) The family member provided financial support for the basic needs of the child for at least one year; (C) There was an established pattern of regular visitation or child care by the family member with the child; or (D) Any other circumstance exists indicating that emotional or physical harm would be reasonably likely to result if such visitation is not granted.

---

[3] The grandparents filed their motion pursuant to OCGA § 19-7-3 (b) (1) (B).

(Emphasis supplied.) OCGA § 19-7-3 (c) (1).[4] A rebuttable presumption exists that "a child who is denied any contact with his or her family member or who is not provided some minimal opportunity for contact with his or her family member when there is a preexisting relationship between the child and such family member may suffer emotional injury that is harmful to such child's health." OCGA § 19-7-3 (c) (3).

Nonetheless, when ruling on questions of grandparent visitation, courts must be mindful of the constitutional implications of interfering with parental rights.

> Today, there can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring. *Nix v. Dept. of Human Resources*, 236 Ga. 794, 795 (225 SE2d 306) (1976). See also *Wisconsin v. Yoder*, 406 U. S. 205, 232 (92 SCt 1526, 32 LEd2d 15) (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); *In re Suggs*, 249 Ga. 365, 367 (291 SE2d 233) (1982) ("The right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling

---

[4] The Supreme Court of Georgia recently found OCGA § 19-7-3 (d) unconstitutional. *Patten v. Ardis*, 304 Ga. 140, 145 (3) (816 SE2d 633) (2018). This does not affect our analysis here, however, as the trial court relied on OCGA § 19-7-3 (c).

5

circumstances."). The United States Supreme Court has held that the right of fit parents to the care, custody, and control of their children is secured by the United States Constitution. See *Troxel v. Granville*, 530 U. S. 57, 65 (II) (120 SCt 2054, 147 LEd2d 49) (2000) ("The interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court."). See also *Quilloin v. Walcott*, 434 U. S. 246, 255 (II) (A) (98 SCt 549, 54 LEd2d 511) (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."). And [the Supreme Court of Georgia] has recognized that the right is secured by our state Constitution as well.

(Citations, footnotes, and punctuation omitted.) *Patten v. Ardis*, 304 Ga. 140, 143-144 (2) (816 SE2d 633) (2018). "It is irrelevant, to this constitutional analysis, that it might, in many instances be better or desirable for a child to maintain contact with a grandparent." (Punctuation omitted.) *Brooks v. Parkerson*, 265 Ga. 189, 194 (2) (c) (454 SE2d 769) (1995).

Here, the trial court acknowledged the role the grandparents played in the life of E. E., including the previous living arrangements in the grandparents' home, as well as the child care and financial support they previously provided. The trial court then recited the standard codified at OCGA § 19-7-3 (c) (1) for determining whether grandparent visitation should be mandated. The trial court emphasized in its order

6

that Georgia law required that it "SHALL consider" the factors identified in OCGA § 19-7-3 (c) (1), and found that it was "bound by these existing factors" in this case.

Although Georgia law requires these factors to be considered by the trial court, it still vests discretion in the trial court. Upon the consideration of these factors, the trial court *may* find harm more reasonably likely if the factors are met. OCGA § 19-7-3 (c) (1). The law does not *require* a finding of harm if the factors are met. See *Ring v. Williams*, 192 Ga. App. 329, 330 (2) (384 SE2d 914) (1989) ("'Shall' ordinarily denotes command and not permission, whereas 'may' ordinarily denotes permission and not command.") (citation omitted). Given the trial court's finding that it was "bound" by the existence of the factors in the present case, we cannot ascertain whether the trial court properly applied the statute. In other words, it is unclear if the trial court exercised its discretion to find clear and convincing evidence of harm, or whether it mistakenly believed it was required to find clear and convincing evidence of harm if the OCGA § 19-7-3 (c) (1) factors were met.

Correct application of this standard is particularly important in a case such as this, where the role of the grandparents in the child's life has changed dramatically over the years. In light of the constitutional implications of state interference with the decisions of parents, we must ensure that the trial court correctly applies the law when

deciding whether to mandate grandparent visitation against the wishes of parents. For this reason, we vacate the trial court's order and remand this case with instruction that the trial court exercise the discretion afforded to it under OCGA § 19-7-3 (c) (1).

2. In light of our holding in Division 1, we need not reach Kelly's remaining enumerations of error.

*Judgment vacated and case remanded. Gobeil and Coomer, JJ., concur.*