**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 5, 2020**

# In the Court of Appeals of Georgia

A20A1116. DAVIS et al. v. CICALA.

MILLER, Presiding Judge.

In this dispute involving grandparent visitation, the trial court awarded grandparent visitation to the children's paternal grandmother, Tami Cicala. Proceeding pro se on appeal, Elicia Davis and Kevin McKinney, the children's parents, contend that the trial court's grant of grandparent visitation under OCGA § 19-7-3 was not supported by the evidence and improper, and that the trial court erred in considering evidence pertaining to a child who is not involved in this case. Discerning no error on the part of the trial court in its grant of grandparent visitation, we affirm.

> When reviewing an order granting grandparent visitation, we view the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found by clear

and convincing evidence that the mandated visitation was authorized. We do not weigh the evidence or determine witness credibility, but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.

(Citation omitted.) *Elmore v. Clay*, 348 Ga. App. 625 (824 SE2d 84) (2019).

So viewed, the record shows that Elicia Davis and Kevin McKinney are the parents of two minor children: D. M., who was born in 2004, and S. M., who was born in 2009. McKinney is also the father of another minor, J. M., born during his current marriage, who is not involved in this action. The parents were divorced in 2014, and the final decree set out that they shared joint legal custody of the children and it named the mother as their primary physical custodian. In June 2018, the mother filed a petition for modification and motion for contempt, seeking to modify the custody and parenting time arrangement that the trial court had established. Cicala filed a motion to intervene in the modification proceeding to request reasonable visitation, and the trial court held a hearing on Cicala's motion.

At the hearing, Cicala testified that the children's father lived with her for two years, during which time the children stayed with her in her home every other weekend and every other Wednesday, and that each child had a bedroom in her home. According to Cicala, during these two years she took care of the children and

provided financial support for them because the father "couldn't afford to feed them" while he was working. Cicala explained that she had a continuous and constant relationship with the children "[s]ince the day they were born," and she attended their sporting events, spent traditional holidays with them, and took them on a summer vacation to Florida each year. Prior to November 2017, when Cicala was no longer allowed to visit the children, "[t]here weren't many weeks that went by that [she] didn't see [her] grandchildren." More recently, Cicala purchased food and Christmas presents and helped pay the father's water and electricity bills.

The parents both testified that Cicala had provided financial support for the children, and Cicala's husband testified to "extended periods" during which he and Cicala cared for the children and that he and Cicala paid most of the expenses while on vacations with the children. The mother affirmed that Cicala had seen the children regularly, that Cicala had been active in the children's lives, that they vacationed with Cicala every summer while she and the father were still married, and that visitation with Cicala added continuity and emotional stability to the children's lives. The mother further testified that for eight years, before she separated from the father, she took the children to Cicala's home "all the time." Indeed, the mother plainly testified that D. M. had been harmed by not seeing Cicala and that he had been crying over

Cicala's health, and as a result, she allowed Cicala and her husband to see the children again. The mother testified that D. M. in particular had been concerned about Cicala, given her primary immune deficiency disease, and that reconnecting with the children with Cicala had been helpful for both children. The children's father testified that D. M. has diagnosed anxiety and that it would harm him to not see Cicala. Cicala also testified to her belief that S. M. would feel hurt if she were not permitted to visit Cicala at the same time as D. M., and that both children would benefit from visiting with her and observing firsthand "that everything's okay and that [she's] okay."

In a detailed order containing several pertinent findings, the trial court granted Cicala's motion to intervene and awarded grandparent visitation under OCGA § 19-7-3 (c) (1). The trial court determined that, by clear and convincing evidence, harm would result if the children were denied independent grandparent visitation, and that it would be in the children's best interest to have such visitation with Cicala. Specifically, the trial court found that the grandchildren and Cicala had a longstanding relationship with a historical pattern of regular visitation, and that during the marriage, separation, and divorce of the parents, Cicala provided some financial support for the children for several years, including assistance with food and other expenses. The trial court noted its consideration of the children's emotional

4

needs at this stage of their development and determined that, given Cicala's diagnosis with primary immune deficiency disorder, time to interact with the children while she remains mobile may be limited. Cicala was granted independent visitation with the children for one day during the Christmas break from school and one week during their summer break, to coincide with the father's portion of summer parenting time. The parents filed a joint motion for reconsideration, which the trial court denied in another detailed order. Jointly, the parents appealed to the Supreme Court of Georgia, which transferred this appeal to this Court.

1. First, we reject Cicala's claim in her appellee brief that the parents' appeal should be dismissed because the visitation issue in this case is ancillary to a divorce action and that the parents were required to file a discretionary application.

"Under Georgia law, visitation rights are a part of custody." *Vines v. Vines*, 292 Ga. 550, 551 (2) (739 SE2d 374) (2013). And "[a]ll judgments or orders in child custody cases awarding, refusing to change, or modifying child custody" are directly appealable under OCGA § 5-6-34 (a) (11). As discussed above, years after the parties were divorced, the mother moved to modify custody, after which Cicala filed a motion to intervene. Because the parents now challenge the trial court's decision on Cicala's motion to intervene, which granted her visitation rights, this is a "direct

5

appeal from a judgment in a child custody case." *Viskup v. Viskup*, 291 Ga. 103 (727 SE2d 97) (2012) (recognizing a father's appeal as a direct appeal where custody was adjudicated as part of the divorce decree, but the mother later filed a petition for modification of custody and the father appealed from the trial court's decision on the petition). Accordingly, we may consider this appeal.

2. In various related enumerations of error, the parents argue that the record neither meets the evidentiary threshold required by OCGA § 19-7-3 nor supports the trial court's award of grandparent visitation, that the ruling was improperly entered over the objection of both parents, and that because the grant of visitation to Cicala was not warranted, they were denied fair process. These arguments fail because the record contains sufficient evidence supporting the trial court's grant of visitation to Cicala under OCGA § 19-7-3 (c) (1), and the trial court committed no reversible error in ordering visitation.

OCGA § 19-7-3, known as the Grandparent Visitation Statute, "codifies a standard for the trial courts to utilize in balancing the interests of the child, the rights of the parents, and the wishes of an alienated grandparent." (Footnote omitted.) *Luke v. Luke*, 280 Ga. App. 607, 611 (3) (634 SE2d 439) (2006). "Where a petitioning grandparent meets this standard, a trial court may grant visitation — notwithstanding

6

evidence or circumstances that weigh against a grant of visitation." (Footnote omitted.) Id. Under OCGA § 19-7-3 (c) (1), the court may grant a family member of the child "reasonable visitation rights if the court finds by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation." OCGA § 19-7-3 (c) (1) further provides as follows:

> In considering whether the health or welfare of the child would be harmed without such visitation, the court shall consider and may find that harm to the child is reasonably likely to result when, prior to the original action or intervention:
>
> (A) The minor child resided with the family member for six months or more;
>
> (B) The family member provided financial support for the basic needs of the child for at least one year;
>
> (C) There was an established pattern of regular visitation or child care by the family member with the child; or
>
> (D) Any other circumstance exists indicating that emotional or physical harm would be reasonably likely to result if such visitation is not granted.

"Georgia law expressly provides that while a parent's decision [regarding family member visitation] shall be given deference by the court, the parent's decision shall not be conclusive when failure to provide grandparent contact would result in emotional harm to the child." (Citation, punctuation, and emphasis omitted.) *Keith v. Callahan*, 332 Ga. App. 291, 292-293 (1) (772 SE2d 386) (2015).

When we view the evidence in the light most favorable to the trial court's judgment and with deference to the trial court's factfinding, we determine that a rational factfinder could have found that mandatory visitation to Cicala was authorized under the statute. First, while the parents argue that they have not "blocked" Cicala from having a relationship with the children, the parents offer "no authority that requires the trial court to balance the competing interests and rights of the grandparent, parent, and child in such a way that OCGA § 19-7-3 would only apply where absolutely all visitation has been cut off, and we find none." *Keith*, supra, 332 Ga. App. at 293 (1) (772 SE2d 386) (2015). Second, the trial court found that the health or welfare of the children would be harmed in the absence of visitation with Cicala and that such visitation would be in the children's best interests. The court determined that, prior to the filing of Cicala's motion to intervene (1) the children resided with Cicala for two years during every period of the father's

8

visitation and there was a historical pattern of regular visitation by Cicala; and (2) Cicala provided some financial support for the children's basic needs for several years. The trial court also considered the children's emotional and extended family needs at this stage of their development, and found that an absence of visitation would be harmful to the children particularly given Cicala's health issues. These findings are supported by the evidence discussed above and satisfy OCGA § 19-7-3 (c) (1) (B), (C), and (D). *Keith*, supra, 332 Ga. App. at 295 (2) (grandparent visitation authorized where the trial court found that the grandmother had spent significant time with the child since her birth, kept a bedroom for her in her home, cared for her two to three days every week, provided substantial financial assistance, was a strong influence in her life, maintained a very close relationship with the child, and that it would be harmful to the child to sever this relationship); *Luke*, supra, 280 Ga. App. at 611-612 (3) (although parent argued that the trial court "forced visitation" over her objection, clear and convincing evidence supported the trial court's finding that the children would suffer emotional harm unless visitation was granted and that visitation was in the children's best interest).

3. The parents also argue that the trial court improperly considered evidence that applied to J. M., the third grandchild who is not involved in this case. This

contention is not meritorious because there is no indication that the trial court considered inadmissible evidence in granting visitation to Cicala.

"When the trial court sits as the trier of facts, it is presumed that the court separated admissible evidence from inadmissible evidence and selected only the legal evidence in forming its judgment." *HWA Properties, Inc. v. Community & Southern Bank*, 320 Ga. App. 334, 336 (739 SE2d 770) (2013). The parents point to nothing rebutting this presumption. On the contrary, the record shows the trial court's continual awareness that J. M. is not involved in the case. The judgment states, "[t]here is also a third grandchild [J. M.] who is *not* a part of this action. . . . [N]either [J. M.] nor his mother are proper parties to this action." The trial court then expressly noted that any visitation involving J. M. would be at the discretion of his parents. Additionally, the trial court stated on the record during the hearing, "[I] don't mean to leave [J. M.] out, it's just lawfully [J. M.'s] not before me and I will not cross that line." Because we discern no indication that the trial court considered any inadmissible evidence concerning J. M. in its decision to grant visitation to Cicala, this argument does not compel reversal. Accordingly, we affirm the trial court's grant of Cicala's motion to intervene for grandparent visitation.

*Judgment affirmed. Mercier, J., concurs; Coomer, J., concurs dubitante.*

10

A20A1116. DAVIS et al. v. CICALA.

COOMER, Judge.

I concur dubitante with the majority opinion.[1] I believe the majority correctly applies the statute in issue, but the statute itself appears to be unconstitutional. This court lacks jurisdiction to strike the statute as unconstitutional. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II and Art. VI, Sec. V, Par. III.

"The right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the

---

[1] "A concurrence dubitante is a concurrence that is given doubtfully. Unlike a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said[,] . . . a concurrence dubitante is a full concurrence, albeit one with reservations." *Benefield v. Tominich*, 308 Ga. App. 605, 611 n. 28 (708 SE2d 563) (2011) (Blackwell, J., concurring dubitante).

most compelling circumstances." *Brooks v. Parkerson*, 265 Ga. 189, 192 (2) (a) (454 SE2d 769) (1995) (citation and punctuation omitted). I believe that OCGA § 19-7-3 unconstitutionally infringes on that parental right because it creates a rebuttable presumption in favor of family members' visitation rights that must be overcome by parents.

In *Brooks*, the Supreme Court of Georgia considered the constitutionality of a statute that provided that the courts "may grant any grandparent of [a] child reasonable visitation rights upon proof of special circumstances which make such visitation rights necessary to the best interests of the child." 265 Ga. at 190 (1) (citing former OCGA § 19-7-3 (c)). The Court held that the statute was unconstitutional because it authorized an award of visitation to a grandparent over the objection of the parents without "a showing that failing to do so would be harmful to the child." 265 Ga. at 194 (2) (c).

Similarly, in *Patten v. Ardis*, 304 Ga. 140, 140 (816 SE2d 633) (2018), the Supreme Court of Georgia considered whether OCGA § 19-7-3 (d) is constitutional. OCGA § 19-7-3 (d) allows a court to award visitation to the parent of a deceased, incapacitated, or incarcerated parent "if the court in its discretion finds that such visitation would be in the best interests of the child." The Court held that OCGA §

2

19-7-3 (d) is unconstitutional because "it authorizes an award of visitation to a grandparent over the objection of a fit parent and without any showing whatsoever (much less a showing by clear and convincing evidence) that the visitation is required to keep the child from actual or threatened harm." Id. at 145 (3).

OCGA § 19-7-3 (c) (1) provides that a court may "grant any family member of the child reasonable visitation rights if the court finds by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation." OCGA § 19-7-3 (c) (1) allows the court to find that harm to the child is "reasonably likely to result" if any of the following factors exist prior to the original action or intervention:

> (A) The minor child resided with the family member for six months or more;
>
> (B) The family member provided financial support for the basic needs of the child for at least one year;
>
> (C) There was an established pattern of regular visitation or child care by the family member with the child; or

(D) Any other circumstance exists indicating that emotional or physical harm would be reasonably likely to result if such visitation is not granted.

Furthermore, OCGA § 19-7-3 (c) (3) provides:

A court may presume that a child who is denied any contact with his or her family member or who is not provided some minimal opportunity for contact with his or her family member when there is a preexisting relationship between the child and such family member may suffer emotional injury that is harmful to such child's health. Such presumption shall be a rebuttable presumption.

Thus, OCGA § 19-7-3 (c) (3) explicitly creates a presumption in favor of family member visitation if the child has a preexisting relationship with the family member. This presumption violates the constitutional protections of parents' rights to raise their children without interference from the State. "[T]here is a presumption that fit parents act in the best interests of their children." *Troxel v. Granville*, 530 U. S. 57, 68 (120 SCt 2054, 147 LE2d 49) (2000). "[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Id. at 68-69. As applied in this case, OCGA § 19-7-3 (c) (3) directly contravenes this

4

presumption that a fit parent will act in the best interest of his or her child, because it, in effect, placed on Davis and McKinney the burden of proving that their children would not suffer emotional injury if the trial court did not order visitation.

Furthermore, to the extent that OCGA § 19-7-3 (c) (1) implies that a presumption of harm exists if any of the factors in that subsection are met, it is also unconstitutional. The presumption must always be that a fit parent will act in the best interest of his or her child, and a court may not set aside the decisions of a fit parent about what is best for his or her child without clear and convincing proof that those decisions have harmed or threaten to harm the child. See *Troxel*, 530 U.S. at 68; *Patten*, 304 Ga. at 140.