**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**August 11, 2021**

# In the Court of Appeals of Georgia

A21A0774. LEACH v. WARNER.

PHIPPS, Senior Appellate Judge.

Jodi Leach, the mother of minor child P. B., appeals from an order awarding Connie Sagen Warner, the child's paternal grandmother, visitation with the child. Leach asserts that the evidence was insufficient to support the visitation award and that a portion of the grandparent visitation statute, OCGA § 19-7-3 (c), is unconstitutional. We find no error and affirm.

When considering an appeal from an order granting grandparent visitation, this Court must "view the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the mandated visitation was authorized." *Elmore v. Clay*, 348 Ga. App. 625, 625 (824 SE2d 84) (2019) (citation and punctuation

omitted). In conducting our review, "[w]e do not weigh the evidence or determine witness credibility, but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review." Id. (citation and punctuation omitted).

So viewed, the record shows that P. B. was born in 2010 to Leach and Joseph Berry, the father of the child and a respondent in the underlying action.[1] Warner is Berry's mother and the paternal grandmother of P. B. The child was born in San Diego, and Warner flew to see her and spend time with her approximately a week after she was born. Warner spent "many, many, many months in San Diego taking care of [P. B.]." She also paid to fly P. B. and Leach to her house when P. B. was very young and Berry, who is in the Marine Corps, was training. According to Warner, Leach and Berry began divorce proceedings when P. B. was ten months old, and the divorce was finalized when she was about eighteen months old. Berry received primary custody of P. B. at that time, and Warner flew back and forth to San Diego, spending approximately two-and-a-half weeks every month taking care of P. B. Warner "was like a mother [to P. B.] at that point[,]" and Warner's husband worked overtime to support two both Warner's and Berry's households. This arrangement

---

[1] Berry did not file a responsive pleading.

continued until October 2014, when Berry gave primary custody of P. B. to Leach because he had received orders from the Marine Corps to move to Florida, but he could not legally remove P. B. from California.

Leach ultimately moved to Georgia in February 2015, and at that point, Warner only saw P. B. for two to three weeks each summer during Berry's visitation period. Warner and her husband paid for a vacation trip with P. B. and Berry every summer until the summer of 2017, when Berry cut ties with Warner because they had a fight. The fight centered around Warner's husband's behavior with P. B.; he wanted to wrestle with P. B., made numerous efforts to be alone with P. B., and hid in the lazy river at Disney World with P. B.

Unable to gain access to P. B. through her son, Warner reached out to Leach in September 2017 and requested contact with P. B. Leach agreed and allowed Warner to visit P. B. in Georgia in 2017 and allowed P. B. to visit Warner twice in Colorado in 2018. Leach also allowed Warner to FaceTime and call P. B. According to Warner, she FaceTimed with P. B. at least once per week, but Leach testified that Warner only FaceTimed with P. B. "maybe ten times" from 2017 until Leach ceased communications with Warner in 2019.

In November 2018, Leach filed for and was awarded sole physical custody of P. B.; Berry missed the court date due to his training and deployment. Warner supported Leach's claim for custody. In the summer of 2019, Berry returned from deployment and told Leach that he did not want Warner to have contact with P. B. As a result, Leach terminated P. B.'s contact with Warner. Leach testified that even before she cut off Warner's contact with P. B., she had some concerns with visitation between P. B. and Warner because she had learned that P. B. slept in the bed with Warner and her husband when she visited.

Warner filed a petition for grandparent visitation rights in March 2020, seeking reasonable visitation pursuant to OCGA § 19-7-3. Following a bench trial, the trial court granted Warner's petition, specifically finding that Warner had an established pattern of regular visitation with P. B., the welfare of P. B. would be harmed unless visitation was granted, and it was in the best interest of P. B. to have contact and visitation with Warner. Warner was granted a weekly FaceTime or phone call with P. B. at a reasonable time for no more than thirty minutes, a monthly in-person 24-hour visit, and one three-day in-person visit each summer. Leach appeals this order.

1. Leach first asserts that the evidence was insufficient to support the trial court's visitation award to Warner under OCGA § 19-7-3. We disagree.

4

OCGA § 19-7-3, the Grandparent Visitation Statute, "was enacted to provide a mechanism for courts to grant a grandparent visitation rights with his or her minor grandchild, where, as here, a child's parent objects." *Luke v. Luke*, 280 Ga. App. 607, 611 (3) (634 SE2d 439) (2006). The statute "codifies a standard for the trial courts to utilize in balancing the interests of the child, the rights of the parents, and the wishes of an alienated grandparent." Id. Under OCGA § 19-7-3 (c) (1), a court may grant a family member reasonable visitation rights "if the court finds by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation." The statute further provides:

> In considering whether the health or welfare of the child would be harmed without such visitation, the court shall consider and may find that harm to the child is reasonably likely to result when, prior to the original action or intervention:
>
> (A) The minor child resided with the family member for six months or more;
>
> (B) The family member provided financial support for the basic needs of the child for at least one year;
>
> (C) There was an established pattern of regular visitation or child care by the family member with the child; or

5

(D) Any other circumstance exists indicating that emotional or physical harm would be reasonably likely to result if such visitation is not granted.

OCGA § 19-7-3 (c) (1).

"Where a petitioning grandparent meets this standard, a trial court may grant visitation — notwithstanding evidence or circumstances that weigh against a grant of visitation." *Luke*, 280 Ga. App. at 611 (3). In fact, according to OCGA § 19-7-3 (c) (3),

> [w]hile a parent's decision regarding family member visitation shall be given deference by the court, the parent's decision shall not be conclusive when failure to provide family member contact would result in emotional harm to the child. A court may presume that a child who is denied any contact with his or her family member or who is not provided some minimal opportunity for contact with his or her family member when there is a preexisting relationship between the child and such family member may suffer emotional injury that is harmful to such child's health. Such presumption shall be a rebuttable presumption.

Leach argues that Warner failed to present clear and convincing evidence establishing a pattern of regular visitation, as required to support a grant of visitation rights under OCGA § 19-7-3 (c) (1) (C). According to Leach, she had no contact with Warner from the time Leach received full physical custody of P. B. in 2014 until late 2017. However, the record belies this assertion, showing instead that during this time, Warner continued visitation and contact with P. B. when Berry had visitation during

6

the summer. Although Berry only had visitation with P. B. in the summer during this time frame, Warner took full advantage of the opportunity for contact with P. B. and spent two to three weeks with her each summer. In addition, after Berry denied Warner contact with P. B. in 2017, Warner reached out to Leach and began FaceTime and in-person contact with P. B. through Leach until Leach ended Warner's contact with P. B. in the summer of 2019. Contrary to Leach's argument, the record establishes clear and convincing evidence of a historical pattern of regular visitation by Warner. See OCGA § 19-7-3 (c) (1) (C).

Leach also argues that Warner failed to provide financial assistance for P. B.'s basic needs or child care after Leach received full-time physical custody of P. B. Even if this were true, a trial court is not required to find both a pattern of regular visitation *and* financial assistance or a pattern of regular visitation *and* child care to award grandparent visitation under OCGA § 19-7-3 (c) (1) because subsections (A) through (D) of the statute and the actions contained in subsection (C) of the statute are written in the disjunctive. "The natural meaning of 'or,' where used as a connective, is to mark an alternative and present choice, implying an election to do one of two things." *Haugen v. Henry County*, 277 Ga. 743, 744-745 (2) (594 SE2d 324) (2004) (citation and punctuation omitted). And, "where a legislative provision is phrased in the

7

disjunctive, it must be so construed absent a clear indication that a disjunctive construction is contrary to the legislative intent." *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996).

Last of all, Leach maintains that she "decided in her capacity as a parent that further visitation of her child by Appellee Warner was not in the best interest of her child[,]" and the trial court's grant of visitation rights to Warner infringes on Leach's right to direct the upbringing of her child and the presumption that a fit parents acts in the best interests of her child. This Court, however, already has addressed and rejected this contention. It is well established that "Georgia law expressly provides that while a parent's decision [regarding family-member visitation] shall be given deference by the court, the parent's decision shall *not* be conclusive when failure to provide grandparent contact would result in emotional harm to the child." *Keith v. Callahan*, 332 Ga. App. 291, 292-293 (1) (772 SE2d 386) (2015) (citation and punctuation omitted; emphasis in original). See also OCGA § 19-7-3 (c) (3). In fact, as already stated, OCGA § 19-7-3 "was enacted to provide a mechanism for courts to grant a grandparent visitation rights with his or her minor grandchild, where, as here, a child's parent objects." *Luke*, 280 Ga. App. at 611 (3); accord *Keith*, 332 Ga. App. at 293 (1). Here, the trial court expressly found that not only would P. B.'s

8

welfare be harmed unless visitation with Warner was granted, but also that P. B. "may suffer emotional injury that is harmful to [her] health" if she was denied contact with Warner.

We reject Leach's contention that the trial court gave no deference to her concerns regarding Warner's husband's actions in crafting the visitation schedule. Indeed, the trial court's order specifically states that Warner "shall supervise the child during the visits and shall not leave the child alone and unattended with her husband[.]"

Viewing the evidence in the light most favorable to the trial court's judgment and with deference to the trial court's factfinding, we conclude that a rational factfinder could have found that mandatory visitation with Warner was authorized under OCGA § 19-7-3 (c). See *Elmore*, 348 Ga. App. at 625.

2. Leach spends the bulk of her appellate brief arguing that OCGA § 19-7-3 (c) is unconstitutional on its face. However, Leach did not raise this constitutional claim below, nor did the trial court rule on the constitutional issue. Accordingly, Leach's constitutional challenge is not properly before this Court. See *Clark v. State*, 236 Ga. App. 153, 155 (2) (510 SE2d 907) (1999) ("This Court will not consider issues and

grounds for objection, even of constitutional magnitude, which were not raised and determined in the trial court.").

Leach attempts to circumvent this procedural defect by arguing that she raised this constitutional claim in her response to Warner's petition for grandparent visitation rights. Specifically, Leach points to the following assertion from her response as proof that she raised this claim below:

> During prior visits by Petitioner, Respondent Leach states that the Petitioner consistently showed a penchant for undermining Respondent's legitimate interest and constitutional right to raise her child as she sees fit and in a way she, Respondent Leach, believes to be in the best interest of the Child.

Contrary to Leach's assertion, however, her response did not assert a constitutional argument. In fact, nowhere in the response does Leach raise any issue with the constitutionality of OCGA § 19-7-3 (c). See *In re L. C.*, 273 Ga. 886, 889 (2) (548 SE2d 335) (2001) (constitutional challenge not properly raised when party does not specify either the particular part or parts of the statute being challenged or how those part or parts of the statute violated a constitutional provision). Neither did Leach raise a constitutional argument during trial. Leach points to her trial attorney's closing argument, where he stated, "And I myself question the constitutional[ity] of Section 19-7-3 but that's of my own opinion." This passing statement made during closing

10

argument is not sufficient to raise a constitutional claim. See *In re L. C.*, 273 Ga. at 889 (2).

Moreover, the trial court did not address any constitutional claim, and this Court will not consider the constitutionality of a statute "unless it clearly appears in the record that the point was directly and properly made in the court below and distinctly passed on by the trial judge." *Wilson v. State*, 212 Ga. 157, 158 (1) (91 SE2d 16) (1956); accord *Brewer v. State of Ga.*, 281 Ga. 283, 284 (2) (637 SE2d 677) (2006) ("Appellant's argument under the State Constitution was not raised and ruled on below and thus we do not address it."); *Lucas v. Lucas*, 273 Ga. 240, 242 (3) (539 SE2d 807) (2000) ("This Court will not rule on a challenge to the constitutionality of a statute unless the issue has been raised and ruled on in the trial court."). Accordingly, Leach's constitutional argument has not been preserved for appellate review.

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*

11